IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:11-cv-2352 ) |
| HORACE MANN INSURANCE COMPANY, an Illinois Corporation, | ) ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Lexington Insurance Company ("Lexington"), by its attorneys and pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, for its Complaint for Declaratory Judgment against Defendant Horace Mann Insurance Company ("Horace Mann"), alleges as follows:

**Introduction**

1. Lexington brings this action for declaratory judgment to adjudicate that it has no duty or obligation to indemnify its insured, Horace Mann, for a third party bad faith claim made against and settled by Horace Mann. The bad faith claim arises out of Horace Mann's handling of a 2008 personal injury claim and lawsuit involving a third-party, Joseph Burley, and Horace Mann's own insured, Christopher Drake. The Horace Mann automobile policy providing coverage for the personal injury claim had a policy limit of $25,000. Notwithstanding this limit, Mr. Burley asserted in the underlying lawsuit that Horace Mann had extra-contractual liability exposure because Horace Mann failed to settle his claims against Mr. Drake for the $25,000 policy limit. Following this and other missed settlement opportunities, Mr. Burley later obtained a jury verdict against Mr. Drake for $17,000,000. Horace Mann subsequently settled the

underlying case and its bad faith exposure by paying Mr. Burley $7,000,000.

2. Horace Mann is not entitled to indemnification under the Lexington Policy for any losses arising from Mr. Burley's bad faith claim, including its $7 million settlement payment. The Lexington Policy is a claims made and reported policy. It only covers claims that are both first made against Horace Mann *and* reported to Lexington during the policy period. Mr. Burley's bad faith claim against Horace Mann predated the policy period. Furthermore, Horace Mann provided late notice of the claim to Lexington in breach of the policy's terms and conditions.

## Parties

3. Plaintiff Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts.

4. Defendant Horace Mann Insurance Company issues automobile liability insurance policies, and is an Illinois corporation with its principal place of business in Illinois.

## Jurisdiction And Venue

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, in that Lexington and Horace Mann are citizens of different States, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(a) and (c), in that Horace Mann is an Illinois corporation, a resident of the Northern District of Illinois, and is subject to personal jurisdiction in the Northern District of Illinois.

## General Allegations

The Relevant Policy Provisions

7. Lexington issued an Insurance Company Professional Liability Insurance Policy No. 01-152-50-17 to Horace Mann Educators Corp. and other related entities, including Horace Mann Insurance

Company, for the Policy Period September 28, 2010 to September 28, 2011 (the "Lexington Policy"). The Policy is subject to a $15,000,000 aggregate Limit of Liability, which is inclusive of Defense Costs, excess of a $1,000,000 Retention. Furthermore, subject to certain conditions and exclusions, the Lexington Policy provides coverage for "Loss" incurred by Horace Mann, an insurance company, for any act, error, or omission in the rendering or failure to render "Professional Services." The Lexington Policy defines Professional Services in Endorsement # 4 to mean "services rendered or required to be rendered solely in the conduct of [Horace Mann's] claims handling and adjusting, risk management," and other specified services. A copy of the Policy is attached hereto at "Exhibit A."

8. The Lexington Policy is a claims-made policy. Coverage is triggered only when two events occur: (1) the claim must be made against Horace Mann during the policy period, and (2) the claim must be reported to Lexington during the policy period. Unless both conditions are satisfied, no coverage is provided under the Lexington Policy. The Lexington Policy provides in Endorsement # 12, section (D), that a "Claim shall be considered to have been first made against [Horace Mann] when written notice of such Claim is received by [Horace Mann] …" The Lexington Policy further defines a "claim" to mean "a written demand for monetary damages or non-monetary relief." Id. at Endorsement # 5.

9. Pursuant to Endorsement # 12, section (A), of the Lexington Policy, and as a condition precedent to the rights provided therein, Horace Mann is required to provide written notice to Lexington "as soon as practicable" after the corporate risk manager, general counsel's office, or claims legal department has knowledge of any claim against Horace Mann that presents a loss exposure equal to or exceeding $500,000.

10. In addition, pursuant to Endorsement #12, section (B), of the Lexington Policy, Horace Mann is required to notify Lexington of the setting of any mediation or trial date for *any* "claim" within

60 days of becoming aware of the date.

The Bad Faith Controversy

11. On or about May 16, 2008, Christopher Drake was involved in a motor vehicle collision with Joseph Burley, who was riding a motorcycle at the time of the collision. It appears undisputed that Mr. Burley suffered severe injuries in the collision. Mr. Drake was insured for this collision under an automobile liability policy issued by Horace Mann. The Horace Mann policy had a $25,000 limit of liability.

12. On or about June 26, 2008, Mr. Burley made a settlement offer to Mr. Drake's insurer, Horace Mann. Mr. Burley offered to settle his claims for the $25,000 policy limits if accepted within 20 days. At the same time, Mr. Burley provided Horace Mann with copies of the police report, photographs of Mr. Burley with his mouth wired shut and his leg and arm in casts, and photographs of his damaged helmet and motorcycle. Horace Mann did not "doubt the injuries involved and the fact this appears to be a limits case." Nevertheless, Horace Mann allowed Mr. Burley's 20-day offer to lapse without acceptance.

13. On or about July 29, 2008, Mr. Burley filed a personal injury lawsuit against Mr. Drake, Horace Mann's insured.

14. Soon thereafter, Horace Mann engaged counsel to evaluate its extra-contractual liability ("ECL") above the $25,000 policy limits for its failure to accept Mr. Burley's policy-limits settlement offer within the 20-day period.

15. In 2009, long after the 20-day offer expired, Horace Mann issued a check for the $25,000 policy limit to Mr. Burley. On October 8, 2009, Mr. Burley returned the uncashed $25,000 policy limits check to Horace Mann.

16. On December 7, 2009, Horace Mann stated in its claim notes: "Our limits have been

offered, tendered, rejected so we'll proceed with normal discovery as the ECL portion appears to be driving this case."

17. On December 18, 2009, ECL Counsel advised Horace Mann that "[s]ince Horace Mann already acknowledged that this might be a limits case to its own insured, and admitted that Horace Mann did not doubt the injuries involved and that this appears to be a limits case, Horace Mann should not have allowed the time limit demand to lapse without acceptance." ECL Counsel further advised Horace Mann that it should settle the bad faith claim before trial: "[I]f you do not settle the extra-contractual exposure with the claimant, you will be forced to trial and will most likely lose the "bad faith" case …. If there is a chance of global settlement, I would recommend you consider that to avoid a trial."

18. Shortly thereafter, on or about January 8, 2010, Horace Mann notified its reinsurer -- *but not Lexington* -- of the bad faith claim for extra-contractual liability based upon its refusal to accept Mr. Burley's 20-day settlement offer. On May 17, 2010, Horace Mann reiterated the existence of a pending "claim" in its notes: "Plaintiff [Burley] is pursuing an ECL *claim* for alleged delay in responding to time demand."

19. In September 2010, the parties scheduled a mediation for November 23, 2010 in connection with Mr. Burley's claim against Mr. Drake and Horace Mann. This mediation was later rescheduled for December 15, 2010.

20. In anticipation of the mediation, in a letter dated September 14, 2010 from Mr. Burley's counsel to Mr. Drake's counsel, Mr. Burley's counsel demanded that Horace Mann "acknowledge [its] extra-contractual exposure and 'open' [its] limits." Mr. Burley's counsel requested that Mr. Drake's counsel advise Horace Mann that "we intend to discuss the extra-contractual aspects of this case" at the mediation. Horace Mann's claim notes indicate that the September 14, 2010 letter was received by Horace Mann on September 20, 2010.

21. In advance of the mediation, Horace Mann extensively evaluated the claim against Horace Mann for extra-contractual liability based on its failure to timely accept the offer to settle for the $25,000 policy limits. In a comprehensive internal memorandum dated December 1, 2010 titled "Home Office Claim Referral – Extra-Contractual Liability," Horace Mann stated: "This claim involves an Alleged Bad Faith in failure to settle timely, failure to settle the claim within the policy limits …."

22. In that same memorandum, Horace Mann assessed the "Potential Verdict Value" of the personal injury case to be "[b]etween $1.4 and $1.9 million dollars, but this could exceed $2 million if the jury believes the need for a knee replacement and spinal fusions." The same memorandum provided a "Recommended Value for Negotiations at Mediation" of $1,500,000 dollars. In a December 3, 2010 email, Horace Mann asked ECL Counsel to provide a breakdown for the "excess damages."

23. In a December 9, 2010 email, Horace Mann's claim adjustor stated: "Verdict potential is indicated between 1.4 and 1.9 million and could go higher than 2 million in this Florida bad faith venue. Mediation is recommended as our best opportunity to resolve this 3rd party bad faith matter. We also need to discuss 1st party bad faith should we let this go to trial and receive an excess verdict. Mediation settlement authority requested up to 1.5 million."

Mediation

24. On December 15, 2010, the parties in the underlying case and Horace Mann attended the mediation. Horace Mann sent its own representative to the mediation to handle what it described as "the ECL portion of the case." At that mediation, Horace Mann received settlement demands and made settlement offers to settle the bad faith claim for failing to accept Mr. Burley's $25,000 policy-limits offer. The mediation was unsuccessful. Despite valuing its total exposure to exceed $2,000,000, Horace Mann offered only $200,000 at the mediation.

25. Significantly, Horace Mann failed to notify Lexington of either the bad faith claim itself

or the mediation. Lexington had no knowledge of the mediation and did not attend or otherwise participate in the mediation. Indeed, in an email dated December 10, 2010, five days prior to the mediation, senior representatives at Horace Mann were advised that with respect to the extra-contractual liability claim against Horace Mann, "[t]he reinsurer was notified, but the E&O carrier [Lexington] was not."

26. Following the unsuccessful mediation, in an email dated December 17, 2010, Horace Mann directed its insurance broker to provide notice of the claim to Lexington. Horace Mann admitted to its broker "[w]e understand this may be a late submission."

27. In a December 28, 2010 email, Horace Mann noted that the case could be potentially settled within the $2,000,000-$5,000,000 range under a "high/low" agreement: "Plaintiff counsel has mentioned interest in hi-low parameters for the verdict in the area of 2-5 million if he can get his client's agreement and HM's commitment to honor same." Horace Mann declined to explore the high/low agreement, however, and decided to try the underlying case.

28. A few weeks later, in a letter dated January 11, 2011, Horace Mann's insurance broker notified Lexington that Mr. Burley's claim involved "circumstance[s] which may reasonably be expected to give rise to a Claim" against Horace Mann. Horace Mann provided no information in the January 11, 2011 letter that Mr. Burley had already asserted a "claim" that Horace Mann was liable to the full extent of Mr. Burley's damages for failing to accept his settlement offer for the $25,000 policy limits, that Horace Mann internally acknowledged the existence of the claim, or that Horace Mann had unsuccessfully attempted to settle the claim in a mediation.

29. The underlying personal injury case was tried to a jury verdict in late January and February 2011. The jury returned a verdict in favor of Mr. Burley and against Mr. Drake for $17,000,000. Following the trial, Horace Mann settled the bad faith claim with Mr. Burley for a

staggering $7,000,000.

30. Lexington has suffered prejudice from Horace Mann's failure to provide timely notice of the claim against Horace Mann, including the right to participate in the mediation and avoid both the $17,000,000 verdict and $7,000,000 settlement.

31. Horace Mann is seeking coverage under the Lexington Policy for its "Loss," including monetary damages, settlements, and defense costs, arising from its failure to pay the $25,000 policy limits pursuant to Mr. Burley's offer and the resultant verdict and settlement.

## COUNT I
## For Declaratory Judgment

32. Lexington realleges and incorporates by reference paragraphs 1-25 above.

33. A "Claim" within the meaning of the Lexington Policy was made against Horace Mann no later than September 20, 2010, when Horace Mann received the letter dated September 14, 2010 from Mr. Burley's counsel. In that letter, Mr. Burley's counsel demanded that Horace Mann "acknowledge [its] extra-contractual exposure and 'open' [its] limits" at the forthcoming mediation. That demand constituted a "claim" against Horace Mann under both the Policy and applicable law.

34. The Lexington Policy only covers claims that are both made against Horace Mann and reported to Lexington during the Lexington Policy period. The claim against Horace Mann for extra-contractual liability to Mr. Burley was made before September 28, 2010, the inception date of the Lexington Policy. Thus, the claim was first made against Horace Mann before the inception date of the Lexington Policy and reported in an untimely and prejudicial manner to Lexington.

35. Furthermore, pursuant to Endorsement # 12, Section A of the Lexington Policy, as a condition precedent to the rights provided by the Policy, Horace Mann was required to notify Lexington of the claim as soon as practicable upon determining that the claim presented a loss exposure equal to or exceeding $500,000. Horace Mann failed to provide notice "as soon as practicable" upon determining

that the claim presented an exposure of at least $500,000.

36. Finally, pursuant to Endorsement # 12, Section B of the Lexington Policy, Horace Mann was required to provide notice of any scheduled mediation or trial within 60 days thereof. Horace Mann did not provide any notice of the mediation to Lexington and provided late notice of the trial.

37. An actual and legal controversy exists between the parties regarding whether Lexington has a duty under the Lexington Policy to indemnify Horace Mann for "Loss" arising from the claim. Lexington is an interested party in the controversy and hereby seeks a declaration of its rights.

WHEREFORE, Plaintiff Lexington Insurance Company respectfully requests that this Court:

A. Declare that Lexington has no duty or obligation under the Lexington Policy to indemnify Horace Mann because the claim was not first made against Horace Mann during the Policy Period;

B. Declare that Lexington has no duty or obligation under the Lexington Policy to indemnify Horace Mann because the claim was not reported to Lexington "as soon as practicable" following Horace Mann's determination that it had exposure equal to or greater than $500,000;

C. Declare that Lexington has no duty or obligation to indemnify Horace Mann because Horace Mann failed to provide any notice of the mediation;

D. Declare that Lexington has no duty or obligation to indemnify Horace Mann because Horace Mann failed to provide at least sixty days notice of the trial; and

      E.      Grant Lexington such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: April 7, 2011

Respectfully Submitted,

LEXINGTON INSURANCE COMPANY,

/s/ Samuel B. Isaacson
One of Its Attorneys

Samuel B. Isaacson – ARDC # 06184323
Joseph E. Collins – ARDC # 06238527
DLA Piper LLP (US)
203 N. LaSalle St., Suite 1900
Chicago, Illinois 60601-1293
Phone: (312) 368-4000
Facsimile: (312) 236-7516
*Counsel for Plaintiff Lexington Insurance Company*