**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 11 C 2352 |
| HORACE MANN INSURANCE COMPANY, an Illinois Corporation, | ) ) ) | Hon. John F. Grady |
| Defendant. | ) | |

**HORACE MANN INSURANCE COMPANY'S
ANSWER TO COMPLAINT AND COUNTERCLAIM**

Defendant Horace Mann Insurance Company ("Horace Mann"), answering

Plaintiff Lexington Insurance Company's ("Lexington") Complaint for Declaratory Judgment,

states as follows. All allegations are denied unless specifically admitted:

**Introduction**

1.     Lexington brings this action for declaratory judgment to adjudicate that it has no duty or obligation to indemnify its insured, Horace Mann, for a third party bad faith claim made against and settled by Horace Mann. The bad faith claim arises out of Horace Mann's handling of a 2008 personal injury claim and lawsuit involving a third-party, Joseph Burley, and Horace Mann's own insured, Christopher Drake. The Horace Mann automobile policy providing coverage for the personal injury claim had a policy limit of $25,000. Notwithstanding this limit, Mr. Burley asserted in the underlying lawsuit that Horace Mann had extra-contractual liability exposure because Horace Mann failed to settle his claims against Mr. Drake for the $25,000 policy limit. Following this and other missed settlement opportunities, Mr. Burley later obtained a jury verdict against Mr. Drake for $17,000,000. Horace Mann subsequently settled the underlying case and its bad faith exposure by paying Mr. Burley $7,000,000.

**ANSWER:**     Horace Mann admits that (i) it issued a $25K policy to Drake who was

sued in a personal injury lawsuit by Burley (the "Burley Litigation"), (ii) during the Burley

Litigation, Burley's counsel asserted that Horace Mann had extra-contractual liability for

allegedly failing to settle the Burley Litigation within the $25K limits of Drake's policy, (iii) Burley obtained a $17M judgment against Drake in the Burley Litigation and demanded in writing that Horace Mann pay the entire amount of the verdict, (iv) Horace Mann, with the knowledge and consent of Lexington, settled the Burley Litigation for $7M, and (v) Lexington has filed this declaratory judgment action seeking an adjudication that it has no obligation to indemnify Horace Mann in connection with the settlement of the Burley Litigation. Horace Mann denies all remaining allegations set forth in this paragraph and affirmatively states that Lexington is obligated to indemnify it for the settlement of the Burley Litigation.

2.      Horace Mann is not entitled to indemnification under the Lexington Policy for any losses arising from Mr. Burley's bad faith claim, including its $7 million settlement payment. The Lexington Policy is a claims made and reported policy. It only covers claims that are both first made against Horace Mann and reported to Lexington during the policy period. Mr. Burley's bad faith claim against Horace Mann predated the policy period. Furthermore, Horace Mann provided late notice of the claim to Lexington in breach of the policy's terms and conditions.

**ANSWER:**      Horace Mann admits that, subject to its other terms and conditions, the Lexington Policy provides coverage for "Loss of the Insured arising from a Claim first made against the Insured during the Policy Period and reported in writing to the Company during the Policy Period . . . ." Lexington Policy at Section 1. Horace Mann denies all remaining allegations in this paragraph.

## Parties

3.      Plaintiff Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts.

**ANSWER:**      Horace Mann admits the allegations set forth in this paragraph.

4.      Defendant Horace Mann Insurance Company issues automobile liability insurance policies, and is an Illinois corporation with its principal place of business in Illinois.

**ANSWER:**      Horace Mann admits the allegations set forth in this paragraph.

-2-

**Jurisdiction And Venue**

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, in that Lexington and Horace Mann are citizens of different States, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

**ANSWER:** Horace Mann admits the allegations set forth in this paragraph.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(a) and (c), in that Horace Mann is an Illinois corporation, a resident of the Northern District of Illinois, and is subject to personal jurisdiction in the Northern District of Illinois.

**ANSWER:** Horace Mann admits the allegations set forth in this paragraph.

**General Allegations**

The Relevant Policy Provisions

7. Lexington issued an Insurance Company Professional Liability Insurance Policy No. 01-152-50-17 to Horace Mann Educators Corp. and other related entities, including Horace Mann Insurance Company, for the Policy Period September 28, 2010 to September 28, 2011 (the "Lexington Policy"). The Policy is subject to a $15,000,000 aggregate Limit of Liability, which is inclusive of Defense Costs, excess of a $1,000,000 retention. Furthermore, subject to certain conditions and exclusions, the Lexington Policy provides coverage for "Loss" incurred by Horace Mann, an insurance company, for any act, error, or omission in the rendering or failure to render "Professional Services." The Lexington Policy defines Professional Services in Endorsement #4 to mean "services rendered or required to be rendered solely in the conduct of [Horace Mann's] claims handling and adjusting, risk management," and other specified services. A copy of the Policy is attached hereto at "Exhibit A."

**ANSWER:** Horace Mann admits that a true and correct copy of the Lexington Policy

is attached as Ex. A. to Lexington's Complaint and that Lexington correctly sets forth the policy

period, limits and certain terms of the policy in this paragraph. Horace Mann states that Policy

must be read as a whole and denies any allegation of this paragraph to the extent it is inconsistent

with the Policy language.

8. The Lexington Policy is a claims-made policy. Coverage is triggered only when two events occur: (1) the claim must be made against Horace Mann during the policy period, and (2) the claim must be reported to Lexington during the policy period. Unless both conditions are satisfied, no coverage is provided under the Lexington Policy. The Lexington Policy provides in Endorsement # 12, section (D), that a "Claim shall be considered to have been first made against [Horace Mann] when written notice of such Claim is received by [Horace Mann] ..." The Lexington

Policy further defines a "claim" to mean "a written demand for monetary damages or non-monetary relief." Id. at Endorsement # 5.

      **ANSWER:**    Horace Mann admits a true and correct copy of the Lexington Policy is attached as Ex. A. to Lexington's Complaint.    Horace Mann admits that, subject to its other terms and conditions, the Lexington Policy provides coverage for "Loss of the Insured arising from a Claim first made against the Insured during the Policy Period and reported in writing to the Company during the Policy Period . . . ." Lexington Policy at Section 1.  Horace Mann also admits that Endorsement 5 of the Lexington Policy defines "Claim" to be "a written demand for monetary damages or non-monetary relief."  Horace Mann admits that Endorsement 12, Section D states that a "Claim shall be considered to have been first made against [Horace Mann] when written notice of such Claim is received by [Horace Mann]."  Horace Mann states that Policy must be read as a whole and denies any allegation of this paragraph to the extent it is inconsistent with the Policy language.

      9.    Pursuant to Endorsement # 12, section (A), of the Lexington Policy, and as a condition precedent to the rights provided therein, Horace Mann is required to provide written notice to Lexington "as soon as practicable" after the corporate risk manager, general counsel's office, or claims legal department has knowledge of any claim against Horace Mann that presents a loss exposure equal to or exceeding $500,000.

      **ANSWER:**    Horace Mann admits that Endorsement No. 12 states:  "The Insured shall, as a condition precedent to the rights provided by this policy give written notice to the Company during the Policy Period as soon as practicable after the Corporate Risk Manager, General Counsel's Office, or Claims Legal Department of the Insured has knowledge of any Claim which involves . . . the Insured's evaluation that a single Claim or related Claims presents a loss and/or expense exposure equal to or exceeding $500,000."  Horace Mann states that Policy must be read as a whole and denies any allegation of this paragraph to the extent it is inconsistent with the Policy language.

1136307.5

10.     In addition, pursuant to Endorsement #12, section (B), of the Lexington Policy, Horace Mann is required to notify Lexington of the setting of any mediation or trial date for any "claim" within 60 days of becoming aware of the date.

**ANSWER:**     Horace Mann admits Endorsement 12 states:  "Notwithstanding the above, the Corporate Risk Manager, General Counsel's Office, Claims Legal Department shall notify the Company of the setting of a trial, arbitration or mediation date within 60 days of becoming aware of the date."  Horace Mann states that Policy must be read as a whole and denies any allegation of this paragraph to the extent it is inconsistent with the Policy language.

The Bad Faith Controversy

11.     On or about May 16, 2008, Christopher Drake was involved in a motor vehicle collision with Joseph Burley, who was riding a motorcycle at the time of the collision.  It appears undisputed that Mr. Burley suffered severe injuries in the collision.  Mr. Drake was insured for this collision under an automobile liability policy issued by Horace Mann.  The Horace Mann policy had a $25,000 limit of liability.

**ANSWER:**     Horace Mann admits the allegations set forth in this paragraph.

12.     On or about June 26, 2008, Mr. Burley made a settlement offer to Mr. Drake's insurer, Horace Mann.  Mr. Burley offered to settle his claims for the $25,000 policy limits if accepted within 20 days.  At the same time, Mr. Burley provided Horace Mann with copies of the police report, photographs of Mr. Burley with his mouth wired shut and his leg and arm in casts, and photographs of his damaged helmet and motorcycle.  Horace Mann did not "doubt the injuries involved and the fact this appears to be a limits case."  Nevertheless, Horace Mann allowed Mr. Burley's 20-day offer to lapse without acceptance.

**ANSWER:**     Horace Mann admits that, on or about June 26, 2008, Burley made a settlement offer to Drake's insurer, Horace Mann, offering to settle his claims against Drake for the $25K policy limits of Drake's policy if accepted within 20 days.  Horace Mann also admits that on or about June 26, 2008, Burley provided Horace Mann with photographs of Burley and "the driver's exchange of information."  Horace Mann admits that on June 30, 2008, it sent a letter to Burley's counsel in which Horace Mann stated:  "We do not doubt the injuries involved and the fact this appears to be a limits case."  Horace Mann further states that in its June 30, 2008 letter, Horace Mann explained to Burley's counsel that "it was necessary we receive the

intake/discharge records from the hospital to properly document this claim." Horace Mann

admits that Burley's counsel did not provide the requested hospital records and that Burley's

settlement demand was not accepted within the 20-day time limit. Horace Mann also states that

it repeatedly told Burley's counsel that it would settle Burley's claim for $25K if Burley

provided the requested hospital intake/discharge records. Horace Mann denies any remaining

allegations of this paragraph.

13.     On or about July 29, 2008, Mr. Burley filed a personal injury lawsuit against Mr. Drake, Horace Mann's insured.

**ANSWER:**     Horace Mann admits the allegations set forth in this paragraph.

14.     Soon thereafter, Horace Mann engaged counsel to evaluate its extra-contractual liability ("ECL") above the $25,000 policy limits for its failure to accept Mr. Burley's policy-limits settlement offer within the 20-day period.

**ANSWER:**     Horace Mann admits that on or about November 21, 2008, it retained

counsel to evaluate its extra-contractual liability above the $25K policy limits of Drake's policy

for its alleged failure to accept Burley's policy limits demand within the 20-day period. Horace

Mann denies any remaining allegations of this paragraph.

15.     In 2009, long after the 20-day offer expired, Horace Mann issued a check for the $25,000 policy limit to Mr. Burley. On October 8, 2009, Mr. Burley returned the uncashed $25,000 policy limits check to Horace Mann.

**ANSWER:**     Horace Mann admits that on or about July 29, 2009, after having received

the previously requested hospital intake/discharge records through discovery, it issued a $25K

check to Burley in settlement of his claims against Drake. Horace Mann further admits that on

or about August 6, 2009, Burley's counsel returned the uncashed $25K check. Horace Mann

denies any remaining allegations of this paragraph.

16.     On December 7, 2009, Horace Mann stated in its claim notes: "Our limits have been offered, tendered, rejected so we'll proceed with normal discovery as the ECL portion appears to be driving this case."

1136307.5

**ANSWER:** Horace Mann admits the allegations set forth in this paragraph.

17. On December 18, 2009, ECL Counsel advised Horace Mann that "[s]ince Horace Mann already acknowledged that this might be a limits case to its own insured, and admitted that Horace Mann did not doubt the injuries involved and that this appears to be a limits case, Horace Mann should not have allowed the time limit demand to lapse without acceptance." ECL Counsel further advised Horace Mann that it should settle the bad faith claim before trial: "[I]f you do not settle the extra-contractual exposure with the claimant, you will be forced to trial and will most likely lose the "bad faith" case .... If there is a chance of global settlement, I would recommend you consider that to avoid a trial."

**ANSWER:** Horace Mann admits that its ECL counsel sent a report on December 18, 2009 but states that such report must be read in its entirety and that this paragraph of the complaint does not accurately or completely quote the December 18, 2009 report. Horace Mann denies any remaining allegations of this paragraph.

18. Shortly thereafter, on or about January 8, 2010, Horace Mann notified its reinsurer but not Lexington – of the bad faith claim for extra-contractual liability based upon its refusal to accept Mr. Burley's 20-day settlement offer. On May 17, 2010, Horace Mann reiterated the existence of a pending "claim" in its notes: "Plaintiff [Burley] is pursuing an ECL claim for alleged delay in responding to time demand."

**ANSWER:** Horace Mann admits that it advised its reinsurer of the Burley Litigation on or about January 8, 2010. Horace Mann denies any remaining allegations in this paragraph.

19. In September 2010, the parties scheduled a mediation for November 23, 2010 in connection with Mr. Burley's claim against Mr. Drake and Horace Mann. This mediation was later rescheduled for December 15, 2010.

**ANSWER:** Horace Mann admits that in August 2010, the Court in the Burley Litigation ordered Burley and Drake to participate in a mediation. Horace Mann further admits that the court-ordered mediation was originally scheduled for November 23, 2010 but was then rescheduled for December 15, 2010. Horace Mann denies that as of September 2010 Burley had asserted any "Claim" – as that term is defined in the Lexington Policy – against Horace Mann. Horace Mann denies any remaining allegations of this paragraph.

20. In anticipation of the mediation, in a letter dated September 14, 2010 from Mr. Burley's counsel to Mr. Drake's counsel, Mr. Burley's counsel demanded that Horace Mann "acknowledge

[its] extra-contractual exposure and 'open' [its] limits." Mr. Burley's counsel requested that Mr. Drake's counsel advise Horace Mann that "we intend to discuss the extra-contractual aspects of this case" at the mediation. Horace Mann's claim notes indicate that the September 14, 2010 letter was received by Horace Mann on September 20, 2010.

     **ANSWER:**    Horace Mann admits that the September 14, 2010 letter from Burley's counsel to Drake's counsel was sent "in anticipation of the mediation." Horace Mann otherwise objects to this paragraph on the grounds that it discloses confidential mediation communications in violation of Florida's Mediation Confidentiality and Privilege Act ("MCPA"), Fla. Stat. §§ 44.401–44.406, and should therefore be stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

     21.    In advance of the mediation, Horace Mann extensively evaluated the claim against Horace Mann for extra-contractual liability based on its failure to timely accept the offer to settle for the $25,000 policy limits. In a comprehensive internal memorandum dated December 1, 2010 titled "Home Office Claim Referral – Extra-Contractual Liability," Horace Mann stated: "This claim involves an Alleged Bad Faith in failure to settle timely, failure to settle the claim within the policy limits ...."

     **ANSWER:**    Horace Mann objects to this paragraph on the grounds that it discloses confidential mediation communications in violation of the MCPA, and should therefore be stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

     22.    In that same memorandum, Horace Mann assessed the "Potential Verdict Value" of the personal injury case to be "[b]etween $1.4 and $1.9 million dollars, but this could exceed $2 million if the jury believes the need for a knee replacement and spinal fusions." The same

memorandum provided a "Recommended Value for Negotiations at Mediation" of $1,500,000 dollars. In a December 3, 2010 email, Horace Mann asked ECL Counsel to provide a breakdown for the "excess damages."

**ANSWER:** Horace Mann objects to this paragraph on the grounds that it discloses confidential mediation communications in violation of the MCPA, and should therefore be stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

23. In a December 9, 2010 email, Horace Mann's claim adjustor stated: "Verdict potential is indicated between 1.4 and 1.9 million and could go higher than 2 million in this Florida bad faith venue. Mediation is recommended as our best opportunity to resolve this 3rd party bad faith matter. We also need to discuss 1st party had faith should we let this go to trial and receive an excess verdict. Mediation settlement authority requested up to 1.5 million."

**ANSWER:** Horace Mann objects to this paragraph on the grounds that it discloses confidential mediation communications in violation of the MCPA, and should therefore be stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

<u>Mediation</u>

24. On December 15, 2010, the parties in the underlying case and Horace Mann attended the mediation. Horace Mann sent its own representative to the mediation to handle what it described as the ECL portion of the case." At that mediation, Horace Mann received settlement demands and made settlement offers to settle the bad faith claim for failing to accept Mr. Burley's $25,000 policy-limits offer. The mediation was unsuccessful. Despite valuing its total exposure to exceed $2,000,000, Horace Mann offered only $200,000 at the mediation.

-9-

**ANSWER:**    Horace Mann objects to this paragraph on the grounds that it discloses confidential mediation communications in violation of the MCPA, and should therefore be stricken.  *See* Horace Mann's Motion to Strike (June 15, 2011).  Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications."  To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

25.    Significantly, Horace Mann failed to notify Lexington of either the bad faith claim itself or the mediation.  Lexington had no knowledge of the mediation and did not attend or otherwise participate in the mediation.  Indeed, in an email dated December 10, 2010, five days prior to the mediation, senior representatives at Horace Mann were advised that with respect to the extra-contractual liability claim against Horace Mann, "[t]he reinsurer was notified, but the E&O carrier [Lexington] was not."

**ANSWER:**    Horace Mann admits that Lexington did not attend the December 15, 2010 mediation.  Horace Mann denies any remaining allegations of this complaint.

26.    Following the unsuccessful mediation, in an email dated December 17, 2010, Horace Mann directed its insurance broker to provide notice of the claim to Lexington.  Horace Mann admitted to its broker "[w]e understand this may be a late submission."

**ANSWER:**    Horace Mann admits that by a December 17 email, Horace Mann instructed Aon Risk Insurance Services West, Inc. ("Aon"), its insurance broker and Lexington's agent, to resubmit the Burley Litigation to Lexington as a "circumstance" that could give rise to a "Claim," as defined in the Lexington Policy.  Horace Mann denies any remaining allegations of this paragraph.

27.    In a December 28, 2010 email, Horace Mann noted that the case could be potentially settled within the $2,000,000-$5,000,000 range under a "high/low" agreement:  "Plaintiff counsel has mentioned interest in hi-low parameters for the verdict in the area of 2-5 million if he can get his client's agreement and HM's commitment to honor same."  Horace Mann declined to explore the high/low agreement, however, and decided to try the underlying case.

-10-

**ANSWER:** Horace Mann objects to this paragraph on the grounds that it discloses confidential mediation communications in violation of the MCPA, and should therefore be stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

28. A few weeks later, in a letter dated January 11, 2011, Horace Mann's insurance broker notified Lexington that Mr. Burley's claim involved "circumstance[s] which may reasonably be expected to give rise to a Claim" against Horace Mann. Horace Mann provided no information in the January 11, 2011 letter that Mr. Burley had already asserted a "claim" that Horace Mann was liable to the full extent of Mr. Burley's damages for failing to accept his settlement offer for the $25,000 policy limits, that Horace Mann internally acknowledged the existence of the claim, or that Horace Mann had unsuccessfully attempted to settle the claim in a mediation.

**ANSWER:** Horace Mann admits that on January 11, 2011, Aon sent Lexington a letter providing notice that the Burley Litigation involved a "circumstance, which may reasonably be expected to give rise to a Claim against the Insureds for a Wrongful Act." Horace Mann further states that, as of January 11, 2011, no "Claim" as that term is defined in the Lexington Policy had been asserted against Horace Mann, and denies that it "internally acknowledged" the occurrence of the defined term "Claim," as specified in the Lexington Policy. Horace Mann denies any remaining allegations of this paragraph.

29. The underlying personal injury case was tried to a jury verdict in late January and February 2011. The jury returned a verdict in favor of Mr. Burley and against Mr. Drake for $17,000,000. Following the trial, Horace Mann settled the bad faith claim with Mr. Burley for a staggering $7,000,000.

**ANSWER:** Horace Mann admits the Burley Litigation was tried in late January and early February 2011 and that the jury returned a $17M verdict in favor of Burley. Horace Mann further admits that Burley demanded in writing that Horace Mann pay the entire $17M verdict.

-11-

Horace Mann further admits that after reporting to Lexington and, Horace Mann settled the

Burley Litigation for $7M. Horace Mann denies any remaining allegations in this paragraph.

30. Lexington has suffered prejudice from Horace Mann's failure to provide timely notice of the claim against Horace Mann, including the right to participate in the mediation and avoid both the $17,000,000 verdict and $7,000,000 settlement.

**ANSWER:** Horace Mann denies the allegations in this paragraph.

31. Horace Mann is seeking coverage under the Lexington Policy for its "Loss," including monetary damages, settlements, and defense costs, arising from its failure to pay the $25,000 policy limits pursuant to Mr. Burley's offer and the resultant verdict and settlement.

**ANSWER:** Horace Mann admits the allegations in this paragraph and states that it is

also seeking attorneys' fees, interest, and other amounts specified in the below Counterclaim.

## COUNT I
## For Declaratory Judgment

32. Lexington realleges and incorporates by reference paragraphs 1-25 above.

**ANSWER:** Horace Mann reanswers and incorporates by reference its answers to

paragraphs 1–25 above.

33. A "Claim" within the meaning of the Lexington Policy was made against Horace Maim no later than September 20, 2010, when Horace Mann received the letter dated September 14, 2010 from Mr. Burley's counsel. In that letter, Mr. Burley's counsel demanded that Horace Mann "acknowledge [its] extra-contractual exposure and 'open' [its] limits" at the forthcoming mediation. That demand constituted a "claim" against Horace Mann under both the Policy and applicable law.

**ANSWER:** Horace Mann objects to this paragraph on the grounds that it discloses

confidential mediation communications in violation of the MCPA, and should therefore be

stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes

the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other

person from testifying in a subsequent proceeding regarding mediation communications." To the

extent a further response is required, Horace Mann denies the remaining allegations set forth in

this paragraph.

34. The Lexington Policy only covers claims that are both made against Horace Mann and reported to Lexington during the Lexington Policy period. The claim against Horace Mann for extra-contractual liability to Mr. Burley was made before September 28, 2010, the inception date of the Lexington Policy. Thus, the claim was first made against Horace Mann before the inception date of the Lexington Policy and reported in an untimely and prejudicial manner to Lexington.

**ANSWER:** Horace Mann objects to this paragraph on the grounds that it discloses and/or is based on confidential mediation communications in violation of the MCPA, and should therefore be stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

35. Furthermore, pursuant to Endorsement # 12, Section A of the Lexington Policy, as a condition precedent to the rights provided by the Policy, Horace Mann was required to notify Lexington of the claim as soon as practicable upon determining that the claim presented a loss exposure equal to or exceeding $500,000. Horace Mann failed to provide notice "as soon as practicable" upon determining that the claim presented an exposure of at least $500,000.

**ANSWER:** Horace Mann objects to this paragraph on the grounds that it discloses and/or is based on confidential mediation communications in violation of the MCPA, and should therefore be stricken. *See* Horace Mann's Motion to Strike (June 15, 2011). Horace Mann further invokes the "privilege" established in MCPA § 44.405(2) "to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." To the extent a further response is required, Horace Mann denies the remaining allegations set forth in this paragraph.

36. Finally, pursuant to Endorsement # 12, Section B of the Lexington Policy, Horace Mann was required to provide notice of any scheduled mediation or trial within 60 days thereof. Horace Mann did not provide any notice of the mediation to Lexington and provided late notice of the trial.

1136307.5

**ANSWER:** Horace Mann admits that Endorsement 12 of the Lexington Policy states: "the Corporate Risk Manager, General Counsel's Office, Claims Legal Department of the Insured shall notify the Company of the setting of a trial, arbitration or mediation date within 60 days of becoming aware of the date." Horace Mann affirmatively states that this policy provision only requires that Horace Mann provide notice to Lexington of trials, arbitrations and mediations where a "Claim" has been asserted against Horace Mann. It does not require Horace Mann to provide notice to Lexington of trials, arbitrations and mediations of an underlying dispute to which Horace Mann is not a party. Horace Mann denies all further allegations of this paragraph.

37. An actual and legal controversy exists between the parties regarding whether Lexington has a duty under the Lexington Policy to indemnify Horace Mann for "Loss" arising from the claim. Lexington is an interested party in the controversy and hereby seeks a declaration of its rights.

**ANSWER:** Horace Mann admits the allegations set forth in this paragraph.

## COUNTERCLAIM

Horace Mann for its Counterclaim against Lexington alleges as follows:

### Introduction

1. Horace Mann brings this counterclaim to recover $5,975,000 owed to it by Lexington under the Lexington Policy for Horace Mann's settlement of bad faith allegations asserted against Horace Mann in the Burley Litigation due to its alleged failure to settle the Burley Litigation within the limits of Drake's policy.

2. In addition, Horace Mann also asserts a claim for damages under 215 ILCS 5/155 against Lexington for Lexington's delay in paying the amounts owed under the Lexington Policy for the Burley settlement on the grounds that the delay is vexatious and unreasonable because, among other things, Lexington willfully, vexatiously and unreasonably violated the MCPA and

-14-

misrepresented key facts, including controlling policy language, in an effort to avoid its obligations under the policy.

3.      To aid the Court in the expeditious resolution of this case and in light of Lexington's failure to properly plead its claim for declaratory relief (including by relying on improper allegations barred by the MCPA and failing to accurately allege key facts and policy language), Horace Mann also includes a counterclaim for declaratory relief seeking a declaration that the defenses raised by Lexington to Horace Mann's claim for coverage (*e.g.*, late notice of Claim) have no merit and that Horace Mann provided Lexington with timely notice under the Lexington Policy regarding the bad faith allegations asserted against Horace Mann in the Burley Litigation that led to the Burley settlement.

### The Lexington Policy

4.      The Lexington Policy (No. 01-152-50-17) has a policy period of September 28, 2010 to September 28, 2011 and has a $15M aggregate limit of liability excess of a $1M retention.  A copy of the Lexington Policy is attached hereto as Exhibit 1.

5.      The "Insuring Agreement" of the Lexington Policy states in relevant part:  "This policy shall pay the Loss of the Insured arising from a Claim first made against the Insured during the Policy Period and reported in writing to the Company during the Policy Period . . . for any actual or alleged Wrongful Act of the Insured in the rendering of or failure to render Professional Services, but only if such Wrongful Act occurs prior to the end of the Policy Period."

6.      Endorsement 3 of the Lexington Policy defines "Loss" to include "monetary damages [and] . . . settlements . . . ."  Further, Endorsement 3 states that "Loss shall not include .

. . any amounts for which the Insured is or is alleged to be liable under any insurance . . . policy . . ."

      7.     Endorsement 5 of the Lexington Policy defines "Claim" as "a written demand for monetary damages or non-monetary relief."

      8.     The Lexington Policy defines "Wrongful Act" as "any act, error or omission in the rendering of or failure to render Professional Services."

      9.     Endorsement 4 of the Lexington Policy defines "Professional Services" in relevant part as "services rendered or required to be rendered solely in the conduct of the Insured's claims handling and adjusting . . ."

      10.     There are two types of notice that can be given under the Lexington Policy, notice of a "Claim," and notice of a "Potential Claim," sometimes called "notice of a circumstance," which is given at the option of the policyholder.  The terms governing notice of a "Claim" are set forth in Endorsement 12, Section A, of the Lexington Policy, which states:  "The Insured shall, as a condition precedent to the rights provided by this policy give written notice to the Company during the Policy Period as soon as practicable after the Corporate Risk Manager, General Counsel's Office, or Claims Legal Department of the Insured has knowledge of any Claim which involves . . . the Insured's evaluation that a single Claim or related Claims presents a loss and/or expense exposure equal to or exceeding $500,000."  Section B of Endorsement 12 states: "Notwithstanding the above, the Corporate Risk Manager, General Counsel's Office, Claims Legal Department of the Insured shall notify the Company of the setting of a trial, arbitration or mediation date within 60 days of becoming aware of the date."

      11.     "Notice of a potential Claim," or circumstance, is covered in Section 9 of the Lexington Policy, which permits Horace Mann to provide "Notice of Potential Claim" as

follows: "If, during the Policy Period . . . the Insured shall become aware of a specific Wrongful Act which the Insured reasonably expects may give rise to a Claim, and the Insured gives written notice to the Company during the Policy Period . . . any Claim which is subsequently made against the Insured arising out of such Wrongful Act and promptly reported to the Company, shall be treated as a Claim first made and reported during the Policy Period."

**The Burley Litigation and Accusations of Bad Faith**

12.    On May 16, 2008, Horace Mann's insured Christopher Drake injured Joseph Burley in a motorcycle accident.

13.    On June 26, 2008, Burley's counsel sent a letter to Horace Mann demanding that Horace Mann settle Burley's claim against Drake for $25K. Burley's counsel provided some information regarding the claim, including certain photographs, but did not include any hospital records. Burley's counsel placed a 20-day limit for Horace Mann to accept the offer.

14.    In response to Burley's demand, Horace Mann requested that Burley provide the hospital intake/discharge records "to properly document the claim." Burley did not provide the requested hospital records within the 20-day period referenced in Burley's counsel's June 26, 2008 letter. Consequently, Horace Mann did not tender the $25K policy limit before the 20-day period expired.

15.    On July 29, Burley sued Drake in the Circuit Court of Hillsborough County, Florida, for damages sustained as a result of the motorcycle accident. Horace Mann was not named as a defendant in the Burley Litigation.

16.    Both before and after the litigation was filed, Horace Mann offered to settle Burley's claim for $25K once Burley provided the previously requested hospital intake/discharge records. Notwithstanding this, Burley's counsel took the position that Horace Mann acted in

-17-

"bad faith" for allegedly unreasonably failing to settle the Burley Litigation within limits within the 20-day time limit placed on Burley's June 26 settlement demand.

## Pertinent Facts Regarding Notice to Lexington

17.     On August 20, 2010, Horace Mann gave notice of the Burley Litigation to its broker and Lexington's agent, Aon Risk Insurance Services West, Inc. ("Aon").  On the same day, acting under the mistaken belief that a bad faith lawsuit had been filed against Horace Mann in 2008, Aon expressed concern in an email to Horace Mann that if that were the case "we would have a late noticing issue on this matter."  After confirming that no bad faith lawsuit had been filed against Horace Mann, Aon advised Horace Mann that notice to Lexington was not required. Based on Aon's advice, on September 24, 2010, Horace Mann "withdrew" notice of the Burley Litigation from Aon and Lexington.

18.     At an August 11, 2010 Case Management Conference, the Burley Litigation was ordered to mediation.  The mediation was held on December 15, 2010.  The Burley Litigation did not settle at the mediation and the mediation was terminated.  On December 17, Horace Mann "resubmitted" the Burley Litigation to Lexington's agent Aon as a "circumstance" that could give rise to a "Claim."  In a December 17 email from Horace Mann to Aon, Horace Mann referenced Aon's prior advice that no notice was required and told Aon:  "Although there's no 'written allegation' of bad faith, there is an exposure in that the plaintiff attorney has verbally alleged bad faith, and we anticipate he'll amend the lawsuit to reflect it."

19.     After further investigating the situation including by discussing the situation with Aon's in-house legal department, on January 11, 2011, Aon advised Horace Mann that "this would be a circumstance at this point rather than a claim by definition . . . is this something you want to report as a circumstance now?"  Exercising its optional right under Section 9 of the

Lexington Policy, Horace Mann confirmed to Aon that it wanted to report the Burley Litigation as a "circumstance" that could give rise to a "Claim." In turn, Aon sent a letter to Lexington later on January 11, 2011 which provided notice pursuant to Section 9 of the Lexington Policy of the Burley Litigation which it accurately described as a "circumstance, which may reasonably be expected to give rise to a Claim against the Insureds for a Wrongful Act."

20.  On January 24, 2011 Lexington acknowledged receipt of the notice of Aon's January 11, 2011 letter in an email to Horace Mann that also stated that "it appears no claim against Horace Mann has been made to date." Lexington's statement was correct. No "Claim," as defined in the Lexington Policy, had been made. There was only a "Potential Claim" or "circumstance," allowing (but not requiring) notice under Section 9 of the Lexington Policy.

21.  On January 25, 2011 Lexington sent another email to Horace Mann that stated that "this submission will be accepted as a notice of circumstance because there is no claim against Horace Mann at this time." Lexington was again completely accurate and showed its understanding of the distinction between the two types of notice under the Lexington Policy.

22.  At no time before the mediation began on December 15, 2010, did Burley make a "written demand for monetary damages" on Horace Mann for payment of a specific amount to settle Burley's allegations that Horace Mann had acted in bad faith for failing to settle his claim within the limits of Drake's policy.

23.  Indeed, at no time before January 11, 2011 when Aon sent the notice letter to Lexington, did Burley make a "written demand for monetary damages" on Horace Mann for payment of a specific amount to settle Burley's allegations that Horace Mann had acted in bad faith for failing to settle his claim within the limits of Drake's policy.

-19-

24.     No one within the group comprised of the "Risk Manager, General Counsel's Office, [or] Claims Legal Department" had knowledge of the Burley mediation or trial more than 60 days before December 17, 2010 or January 11, 2011.

25.     In all events, the Burley mediation and trial were a mediation and trial of an underlying dispute to which Horace Mann was not a party, and therefore no notice was required under the Lexington Policy within 60 days or at all.

### The Burley Verdict and Settlement and Lexington's Denial of Coverage

26.     The Burley Litigation was tried to a jury in late January and early February 2011. The jury returned a verdict in favor of Burley for $17M. Horace Mann notified Lexington about the verdict. Thereafter, Burley's counsel demanded in writing that Horace Mann pay the entire amount of the verdict because Horace Mann allegedly unreasonably failed to settle Burley's claim within the limits of Drake's policy. After Horace Mann reported to Lexington, Lexington opined that the case should settle for less than $10M.

27.     On March 15, 2011, after the verdict was returned in the Burley Litigation, Lexington sent a letter to Horace Mann in which it denied coverage for any exposure Horace Mann might have arising out of the Burley Litigation, explained the bases for its denial of coverage, and informed Horace Mann that Lexington intended to file litigation against Horace Mann seeking a declaration of its rights under the Lexington Policy for the Burley Litigation. Among other things, Lexington changed its position set forth in its January 24 and 25 emails to Horace Mann (that, as of January 11, there was no "Claim" asserted against Horace Mann) and took the position that a "Claim" had been asserted before the inception of the Lexington Policy.

1136307.5

28.     After receipt of the March 15 denial letter, with Lexington's knowledge and consent, Horace Mann settled the Burley Litigation for $7M (on March 28) and funded the settlement itself (on April 8).

### Lexington's Vexatious and Unreasonable Conduct

29.     As promised in its March 15 letter, Lexington filed this litigation on April 7, 2011, seeking a declaration that it owes Horace Mann no coverage for the Burley settlement.

30.     In its complaint, Lexington willfully, vexatiously and unreasonably violated Florida's Mediation Confidentiality and Privilege Act ("MCPA"), Fla. Stat. §§ 44.401–44.406, by relying on, quoting and basing its claim for declaratory relief on confidential "mediation communications" that it was strictly prohibited from disclosing to anyone other than another mediation participant. *See* Horace Mann's Motion to Strike (June 15, 2011).  By violating the MCPA, Lexington undermined Florida's strong public policy favoring the confidentiality of mediations and harmed Horace Mann by filing a public document that reveals mediation communications with Horace Mann's insured's opponent and its confidential preparations for a mediation that it expected to remain confidential.

31.     Also in an effort to evade its obligations under its policy, Lexington vexatiously and unreasonably misstated key facts and policy language in its denial letter and its complaint forcing Horace Mann to file this Counterclaim.  In particular:

(a)     Even though it had previously recognized in the emails to Horace Mann discussed above in paragraphs 20-21 that no "Claim" as defined in the Lexington Policy had been made prior to January 11, 2011, Lexington unreasonably and vexatiously changed its position after the $17M verdict in the Burley Litigation and, in its denial letter and complaint, Lexington took the opposite position that a "Claim" was asserted before its policy issued.

-21-

(b)     Even though the Lexington Policy defines "Claim" as a "written demand for monetary relief," Lexington alleges no admissible "written demand for monetary damages" in support of its contention that a "Claim" was made before the inception of the Lexington Policy or that Horace Mann failed to provide timely notice of any such "Claim."

(c)     Even though it is clear that Endorsement 12 of the Lexington Policy only requires that notice of a "Claim" be given when "the Corporate Risk Manager, General Counsel's Office, or Claims Legal Department of the Insured has knowledge of any Claim which involves . . . the Insured's evaluation that a single Claim or related Claims presents a loss and/or expense exposure equal to or exceeding $500,000," Lexington does not allege in its denial letter or complaint whether, when or who within with the group comprised of the "Corporate Risk Manager, General Counsel's Office or Claims Legal Department" had the requisite knowledge to trigger Horace Mann's notice obligations and would have known there was no such person had any investigation been done.

(d)     Even though it is clear that the Lexington Policy only requires "the Corporate Risk Manager, General Counsel's Office, Claims Legal Department of the Insured [to] notify the Company of the setting of a trial, arbitration or mediation date within 60 days of becoming aware of the date," Lexington does not allege in its denial letter or complaint whether, when, or who within the group comprised of the "Corporate Risk Manager, General Counsel's Office or Claims Legal Department" learned of the Burley mediation or trial more than 60 days before December 17, 2010 or January 11, 2011 and would have known there was no such person had any investigation been done.

(e)     Lexington ignored the fact that Aon, its agent, advised Horace Mann in September 2010 that notice of the Burley Litigation should not be provided to Lexington at that time sine no "Claim" had then been asserted against Horace Mann.

## COUNT I
### Breach of Contract

32.     Horace Mann realleges and incorporates by reference paragraphs 1-31 above.

33.     Section 9 of the Lexington Policy provides:  "If, during the Policy Period . . . the Insured shall become aware of a specific Wrongful Act which the Insured reasonably expects may give rise to a Claim, and the Insured gives written notice to the Company during the Policy Period . . . any Claim which is subsequently made against the Insured arising out of such Wrongful Act and promptly reported to the Company, shall be treated as a Claim first made and reported during the Policy Period."  Pursuant to Section 9 of the Lexington Policy, Horace Mann provided timely notice of  the Burley Litigation as a "circumstance" that could give rise to a "Claim."  After the Burley verdict, Burley demanded in writing that Horace Mann pay the entire amount of the verdict.  This "Claim" was reported to Lexington as required by Section 9 of the Lexington Policy.

34.     The $7M settlement of the Burley litigation constitutes "Loss" arising from "Claim first made against the Insured during the Policy Period . . . for any actual or alleged Wrongful Act of the Insured in the rendering of or failure to render Professional Services."  Further the "Wrongful Act" which gave rise to the "Claim" occurred prior to the end of the Policy Period of the Lexington Policy.

35.     Horace Mann fully performed under the Lexington Policy including paying its premium and satisfying all conditions precedent to coverage.

1136307.5

36.    Lexington has breached its obligations under the Lexington Policy by refusing to provide coverage to Horace Mann under the Lexington Policy for the Burley settlement.

37.    Lexington's breach has resulted in damages to Horace Mann totaling (a) $5,975,000, which equals the $7M settlement paid to Burley less Horace Mann's $1M retention and less the $25K limit of Horace Mann's policy issued to Drake, and (b) attorneys' fees incurred in bringing this action.

**COUNT II**
**Declaratory Judgment**

38.    Horace Mann realleges and incorporates by reference paragraphs 1–31 above.

39.    An actual and legal controversy exists between the parties regarding whether (a) a "Claim" was made before the inception of the Lexington Policy arising out of the Burley Litigation, (b) Horace Mann provided Lexington with timely notice of a "Claim" or a "circumstance" that could arguably give rise to a "Claim" arising out of the Burley litigation, (c) Horace Mann was required to provide notice and, if it was, whether it gave timely notice of the Burley mediation and/or trial, and (d) whether Lexington is estopped from arguing that Horace Mann failed to provide timely notice by virtue of the advice provided by its agent Aon that earlier notice was not required.

40.    Horace Mann is entitled to a declaration, under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, that pursuant to the Lexington Policy, (a) no "Claim" involving the Burley Litigation was made before the inception of the Lexington Policy, (b) it gave timely notice of the "Claim" or "circumstance" that could reasonably give rise to a "Claim" arising out of the Burley Litigation, (c) it either was not required to provide notice of the Burley mediation and/or trial or it provided timely notice thereof, and (d) Lexington is estopped from arguing that

-24-

Horace Mann failed to provide timely notice by virtue of the advice provided to Horace Mann by Lexington's agent Aon.

## COUNT III
## Violation of 215 ILCS 5/155

41.     Horace Mann realleges and incorporate by reference paragraphs 1-31 above.

42.     The amount paid by Horace Mann to fund the Burley settlement is plainly "Loss" covered under the Lexington Policy.

43.     Lexington has no good faith basis to deny coverage for such "Loss."

44.     Lexington has acted in bad faith in denying coverage for the Burley settlement. Horace Mann has been damaged as a result of Lexington's bad faith conduct.

45.     Lexington has acted vexatiously and unreasonably in denying coverage for the Burley settlement, including on the grounds set forth in paragraphs 29-31, above.  Lexington's conduct entitles Horace Mann to recover damages as set forth in 215 ILCS 5/155.

WHEREFORE, Horace Mann prays for:

(1)     Judgment in Horace Mann's favor and against Lexington on Counts I and III of Horace Mann's Counterclaim;

(2)     Judgment in Horace Mann's favor on Lexington's complaint and a declaration in response to Lexington's complaint and Count II of Horace Mann's Counterclaim that (a) no "Claim" involving the Burley Litigation was made before the inception of the Lexington Policy, (b) Horace Mann gave timely notice of the "Claim" or a "circumstance" that could reasonably give rise to a "Claim" arising out of the Burley Litigation, (c) Horace Mann either was not required to provide notice of the Burley mediation and/or trial or it provided timely notice thereof, and (d) Lexington is estopped from arguing that Horace Mann failed to provide timely notice by virtue of the advice provided to Horace Mann by Lexington's agent Aon;

(3)     Compensatory damages;

(4)     Damages as permitted by 215 ILCS 5/155, including but not limited to an award

of attorneys' fees and costs;

(5)     Pre- and post-judgment interest; and

(6)     Such other relief as the interests of justice may require.


## JURY DEMAND

Horace Mann respectfully requests a jury trial on all issues triable thereby.

Dated:  June 17, 2011                          Respectfully submitted,

                                               HORACE MANN INSURANCE COMPANY,


Gary M. Elden                       By:     s/ Patrick T. Nash_____
Patrick T. Nash                             One of Their Attorneys
Justin R. Donoho
GRIPPO & ELDEN LLC
111 South Wacker Drive
Suite 5100
Chicago, Illinois  60606
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195

1136307.5

**CERTIFICATE OF SERVICE**

I, Patrick T. Nash, an attorney, hereby certify that on June 17, 2011, I caused a

true and correct copy of the foregoing **HORACE MANN INSURANCE COMPANY'S**

**ANSWER TO COMPLAINT AND COUNTERCLAIM** to be served on counsel of record via

ECF pursuant to the General Order on Electronic Filing of the United States District Court,

Northern District of Illinois.


/s/ Patrick T. Nash _____