IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 CV 2352 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| HORACE MANN INSURANCE COMPANY, ) | |
| ) | |
| Defendant/ Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| AON RISK INSURANCE SERVICES INC., ) | |
| ) | |
| Third-Party Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Lexington Insurance Company ("Lexington") sues Defendant Horace Mann Insurance Company ("Horace Mann") for declaratory judgment in relation to an Insurance Company Professional Liability Insurance Policy ("E&O policy" or the "policy") issued to Horace Mann by Lexington. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, Lexington's motion for summary judgment is denied, and Horace Mann's partial motion for summary judgment is granted.

**I. BACKGROUND**

**A. Facts[1]**

Horace Mann is an insurance company in the business of issuing, *inter alia*, automobile liability insurance policies. On October 4, 2010, Lexington issued a claims-made E&O policy to Horace Mann for a policy period running from September 28, 2010 to September 28, 2011. The

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text.

policy was subject to a $15,000,000 aggregate Limit of Liability, in addition to a $1,000,000 Retention. The policy provides coverage to Horace Mann arising from any "Wrongful Act," which is defined as "any act, error or omission in the rendering of or failure to render Professional Services. 'Wrongful Act' shall also mean any Related Wrongful act." Horace Mann's Resp. to Lexington's Statement of Undisputed Material Facts ¶ 8. Pursuant to the policy, Lexington "shall pay the Loss of [Horace Mann] arising from a Claim first made against [Horace Mann] during the Policy Period and reported in writing to [Lexington] during the Policy Period." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 3, at cl. 1.

A claim is defined as: "1. a written demand for monetary damages; or 2. a judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought." Id. at cl. 3(a). As to the second definition of claim, the policy clarifies that, "[n]otwithstanding the above, the Corporate Risk Manager, General Counsel's Office, Claims Legal Department of [Horace Mann] shall notify [Lexington] of the setting of a trial, arbitration or mediation date within 60 days of becoming aware of the date." Id. at Endorsement No. 12(B).

On January 11, 2011, Horace Mann's insurance broker, Third Party-Defendant Aon Risk Insurance Services West, Inc. ("Aon"), sent Lexington a letter providing written notice of a claim under the E&O policy. Specifically, the letter provides "On behalf of [Horace Mann] and pursuant to the reporting provisions of the referenced Policy . . . we hereby give notice of the above-referenced circumstance, which may reasonably be expected to give rise to a Claim against [Horace Mann] for a Wrongful Act." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 55.

The following is an account of the extensive circumstances underlying the January 11, 2011 claim made to Lexington by Horace Mann pursuant to the E&O policy. On May 16, 2008, in Tampa, Florida, a motor vehicle collision occurred between Joseph Burley ("Burley") and Christopher Drake ("Drake"), who is insured by Horace Mann. Burley was traveling on his motorcycle when he collided with a truck driven by Drake, causing a "T-bone" collision. Burley sustained serious injuries including a severely fractured right foot, left hand and wrist, a gross deformity of the jaw, a torn right knee, and lost teeth.

Shortly thereafter, Burley retained counsel. On June 26, 2008, Burley's counsel made a written demand to Horace Mann offering to settle Burley's claims against Drake for $25,000—the limit of Drake's automobile insurance policy with Horace Mann—if accepted within twenty days. At the time of the demand, it is undisputed that Horace Mann did not have access to any medical bills or hospital intake or discharge records related to Burley's injuries. Enclosed within the demand letter, however, was a description of the accident and resulting injuries, as well as a series of pictures purporting to show the extent of Burley's injuries. Four days later, on June 30, 2008, Horace Mann responded to Burley's counsel, stating that

> [i]n reviewing the demand package, we found it to be lacking medical records from the hospital. We do not doubt the injuries involved and the fact this appears to be a limits case. However, it is necessary we receive the intake/discharge records from the hospital to properly document this claim. Please forward the requested documentation so that we may resolve this matter promptly.

App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 12. Horace Mann argues that it was willing to settle the claim at all times; however, before doing so, at a minimum, it needed the hospital intake and discharge records to ensure that no one was committing fraud. On August 13, 2008, Burley's counsel sent a letter to Horace Mann informing it that the demand had expired and that litigation had

commenced in Florida state-court. In the following weeks, Horace Mann continued settlement attempts with Burley's counsel. Additionally, the notes contained in its claim file indicate that Horace Mann suspected that it was being set up for a bad-faith claim by Burley's counsel for its failure to settle for the policy limits during the twenty-day demand period. Settlement attempts continued, but Burley's attorney refused to accept the policy limits and returned all attempts to tender checks in the amount of $25,000.

On November 21, 2008, Horace Mann retained outside counsel ("ECL counsel") "to evaluate its potential extra-contractual liability for its alleged failure to accept the time-limited demand." Horace Mann's Resp. to Lexington's Statement of Undisputed Material Facts ¶ 34. That same day, the office manager of Horace Mann's Columbia, South Carolina Claims Office sent ECL counsel an email informing him that Burley's counsel told Drake's counsel that "he intends on coming after [Horace Mann] for extra contractual monies." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 17, at p. 2. Horace Mann's ECL counsel continued settlement attempts with Burley's counsel to no avail.

Investigation and discovery in the Burley-litigation continued. On December 18, 2009, ECL counsel sent Horace Mann an email for purposes of aiding in settlement negotiations. He advised that "Florida Courts presently have no interest in the inequities created by the bad faith 'set up.'" App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 5, at p. 2. He further advised:

> In all likelihood, if you do not settle your extracontractual exposure with the claimant, you will be forced to trial and will most likely lose the 'bad faith' case. We may be able to establish that your conduct was professional and that the other side really had no interest in settling. However, the fact remains that Horace Mann did not capitalize on a relatively reasonable settlement demand and thereby exposed its insured to a possible excess judgment.

4

Id. at p. 3. ECL counsel had previously advised Horace Mann that the facts favored a determination of no extra-contractual liability. Sometime thereafter, "Horace Mann split its claims file in that it assigned different individuals to handle the bodily injury side of the file, on the one hand, and the 'potential bad faith side of the file,' on the other." Horace Mann's Resp. to Lexington's Statement of Undisputed Material Facts ¶ 46.

Meanwhile, on January 8, 2010, Horace Mann submitted an "ECL Claim Form" to its reinsurance broker, Benfield, Inc. ("reinsurer"). Horace Mann's policy with the reinsurer provided coverage for loss arising from, *inter alia*, a bad-faith claim, to the extent that it exceeded $750,000 up to $1,000,000. Specifically, the reinsurance policy provides: "Whenever a claim is reserved by [Horace Mann] for an amount greater than 50.0% of its retention hereunder and/or whenever, in the Company's opinion, a claim appears likely to result in a loss to this Contract, [Horace Mann] shall notify the Reinsurer." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 34, at art. XII. Horace Mann contends that its reinsurance policy and related ECL Claim Form is not relevant to its E&O policy with Lexington, because, among other reasons, Horace Mann has an entirely different claim-reporting policy and written contract with its reinsurer than it does with Lexington.

Months later, on August 11, 2010, as the litigation progressed, the Florida state-court ordered Burley and Drake to participate in mediation. On September 14, 2010, Burley's counsel sent Drake's counsel a letter regarding the upcoming mediation. The letter was forwarded to and received by a claims handler at Horace Mann on September 20, 2010. The letter in its entirety provides as follows:

> Dear [Drake's counsel],

> We have scheduled the mediation of this case to occur on November 23, 2010. We are scheduling a number of depositions of treaters and experts to occur before that time. We want you and the carrier to have a full picture of the past and future damages. Obviously, the only way your client is going to obtain any relief from the judgment that certainly will be obtained in this case, is if the carrier agrees to acknowledge their extra-contractual exposure and 'open' their limits.
>
> I know that you are in no way involved in the assessment of the extra-contractual aspect of this case. However, you are the only professional who can communicate this message to the carrier. If they have an extra-contractual lawyer looking into this matter, please let me know the name of that person and I will deal with them directly. If not, please relay my message that we intend to discuss the extra-contractual aspects of this case that, if acknowledged, would give your client assurance of financial relief.
>
> Please feel free to call me to discuss the details of this further. As a side note, I hope that your father makes a good recovery.
>
> Sincerely,
>
> [Burley's counsel]

App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 40. In preparation for the mediation, Burley's counsel indicated to Drake's counsel that he valued the case in excess of $1.5 million. Drake's counsel estimated the case to be worth between $455,000 and $530,000. A regional claims manager for Horace Mann estimated the verdict potential to be between $1.4 million and $1.9 million, or possibly higher than $2 million.

In the interim, the mediation was rescheduled for December 15, 2010. The claims consultant handling the ECL portion of the split-file requested $1.5 million in settlement authority. It is undisputed that "Charlton Young of Horace Mann's General Counsel's Office first became aware of the Burley mediation on December 7, 2010," and that Dennis Bianchi ("Bianchi"), Senior Vice President of Claims at Horace Mann was informed of the incident, litigation, and upcoming mediation for the first time on December 10, 2010. Horace Mann's

Statement of Additional Facts Submitted In Opp'n to Lexington's Mot. for Summ. J. ¶ 36. The following day, Bianchi approved settlement authority up to $200,000 for the mediation. The mediation was held on December 15, 2010. According to a post-mediation summary provided by Horace Mann's ECL counsel, "Plaintiffs first and only demand was $8 million. Our first and only response was the $200,000 authority we were given. Any lower offer would have been futile. The case immediately impassed upon our offer." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 50, at p. 3.

Two days later, on December 17, 2010, Horace Mann directed Aon to provide notice to Lexington, its E&O carrier, of the Burley litigation. It is undisputed that Horace Mann's Assistant Vice President of Casualty Claims, David Ousley, told the liaison between Horace Mann's Claims office and its insurance brokers that it was a mistake not to notify Lexington earlier. Although acknowledging the statement, Horace Mann denies "that the reference to a 'mistake' has any relevance as to whether Horace Mann failed [to] comply with its duties to timely notify Lexington of the Burley Litigation." Horace Mann's Resp. to Lexington's Statement of Undisputed Material Facts ¶ 70.

On January 11, 2011, the aforementioned letter was sent to Lexington, informing it of the circumstances of the underlying Burley litigation "which may reasonably be expected to give rise to a Claim against [Horace Mann] for a Wrongful Act." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 55. On January 24, 2011, Lexington's claims handler (assigned to the claim at issue) emailed Horace Mann stating:

> This claim has been assigned to me. In reviewing the documents provided it appears mediation for the underlying case was held on December 15, 2010 and that the trial is set for January 31, 2011.

> It appears that Horace Mann is considering an extra contractual settlement with the Plaintiff in this matter, with your report indicating a recommended value of $1.5 million (inclusive of the underlying policy's limits of $25k). Please contact me as soon as possible to discuss the current status of this case and the potential bad faith exposure. It appears no claim against Horace Mann has been made to date.

App. to Horace Mann's Statement of Additional Facts Submitted in Opp'n to Lexington's Mot. for Summ. J. Ex. U, at pp. 3-4. Although Lexington acknowledges the email, it further contends that at the time it was written, its claims handler did not yet have access to Horace Mann's entire claim file and the September 14, 2010 letter in particular.

The underlying personal injury jury trial took place in late January of 2011 to February of 2011. Ultimately, the jury returned a verdict of $17 million in favor of Burley and against Drake. On February 16, 2011, Horace Mann sent its entire claim file to Lexington, which included a copy of the September 14, 2010 letter. On March 3, 2011, Burley's counsel contacted Horace Mann's ECL counsel regarding payment and possible settlement of the $17 million jury verdict against Horace Mann's insured, Drake. On March 15, 2011, Lexington issued a reservation of rights letter to Horace Mann, indicating, among other things, that it was taking the position that Horace Mann received the claim prior to the inception of the E&O policy on September 28, 2010, and therefore, it is not a covered claim under the policy. Horace Mann finally settled its claim with Burley for $7 million on April 5, 2011, and the next day, it received a "General Release" from Drake, its insured.

**B. Procedural History**

On April 7, 2011, Lexington filed this declaratory judgment action against Horace Mann, arguing that the "bad faith" claim occurred outside the policy period. Horace Mann asserted a counterclaim against Lexington, seeking to recover the portion of the $7 million Burley-settlement that exceeds the $1,000,000 retention in the E&O policy. On June 30, 2011, Horace

8

Mann filed a Third-Party Complaint against Aon, contending that "in the event that Horace Mann was late in notifying Lexington of the Burley Litigation, Aon is liable to Horace Mann for professional negligence for failing to properly advise Horace Mann in connection with giving notice to Lexington of the Burley Litigation and in failing to promptly follow Horace Mann's instructions to notify Lexington of the Burley Litigation." Third-Party Compl. ¶ 8.

On December 12, 2012, Horace Mann filed a motion for partial summary judgment, seeking a determination that the September 14, 2010 letter does not constitute a claim under the Lexington E&O policy. On January 15, 2013, Lexington filed a cross-motion for summary judgment, seeking a determination that Horace Mann's claim accrued outside the time-limits of the policy. The motions are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Cross-motions [for summary judgment] must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." Bloodworth v. Vill. of Greendale, 475 F. App'x 92, 95 (7th Cir. 2012). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted).

The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Id. But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013) (quoting Celotex Corp., 477 U.S. at 322).

**B. Cross Motions for Summary Judgment**

It is undisputed that the insurance policy at issue in this diversity jurisdiction action is governed by Illinois law.

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

Phillips v. Prudential Ins. Co. of Am., 714 F.3d 1017, 1020 (7th Cir. 2013) (quoting Clarendon Nat'l Ins. Co. v. Medina, 645 F.3d 928, 933 (7th Cir. 2011)). Furthermore, "[t]he construction of an unambiguous insurance policy is a question of law." Am. Fam. Mut. Ins. Co. v. Savickas, 739 N.E.2d 445, 448-49 (Ill. 2000).

Here, the relevant question is whether a claim, as defined by the E&O policy, accrued outside of the policy period, such that Lexington may deny coverage to Horace Mann. Because neither party argues that the policy language is ambiguous, the Court looks solely to the contract and the terms as defined therein to determine whether a claim accrued outside of the policy period of September 28, 2010 to September 28, 2011.

### 1. *Written Demand for Monetary Damages*

The E&O policy provides two definitions of claim. The first defines a claim as "a written demand for monetary damages." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 3, at cl. 3(a). As an initial matter, Horace Mann argues that Lexington is estopped from alleging that the September 14, 2010 letter is a claim that accrued outside of the policy period because Lexington previously admitted on January 24, 2011—through an email from its claims handler—that "no claim against Horace Mann has been made to date." App. to Horace Mann's Statement of Additional Facts Submitted in Opp'n to Lexington's Mot. for Summ. J. Ex. U, at p. 4. The Court rejects this argument. It is undisputed that Horace Mann did not turn over its entire claim file (which contained the September 14, 2010 letter) to Lexington until after the date of the alleged admission on February 16, 2011. "Under the general rule, estoppel cannot be asserted against a party not having knowledge of all relevant facts." Brown's Furniture, Inc. v. Wagner, 665 N.E.2d 795, 806 (Ill. 1996). Because Lexington did not have "knowledge of all relevant facts" at the time in which it made the alleged admission, the doctrine of estoppel is inapplicable.

Lexington contends that the September 14, 2010 letter, read in the context of Horace Mann's previous involvement in the Burley litigation and/or potential bad faith claim, constitutes a "written demand for money damages" as defined by the policy. Specifically, Lexington argues

that the letter's reference to the "extracontractual exposure" and "'open' their limits" constitutes a written demand for damages, and thus a claim outside of the relevant policy period.

Horace Mann rejects Lexington's suggestion that the letter should be read in the context of other "extrinsic" evidence, and argues that only the language of the policy should be considered. In support of this argument, Horace Mann relies on Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc., which distinguishes between a demand for a specific amount of money and notice of potential liability or a demand that may be made in the future. 39 F.3d 138, 143 (7th Cir. 1994).

> [A]n actual claim is distinguished from an 'event' which could give rise to an actual claim in the future. Obviously if an actual claim is made, the insured must report the claim during that same policy period. However, when a claim falls under the second category—i.e., it is not an actual claim but 'merely the reasonable expectation of a future claim'—the insured has a choice of either (1) accelerating the claim to the current policy period by giving notice to the insurance company during that period, or (2) waiting until an actual claim is filed and relying on the insurance coverage in effect at that time.

Id. (quoting Nat'l Union Fire Ins. Co. v. Baker & McKenzie, 997 F.2d 305, 307-308 (7th Cir. 1993)).

Based on a plain reading of the September 14, 2010 letter, the Court finds that it is not a claim as first defined by the E&O policy. While the letter is in "written" form, it is not addressed to Horace Mann. The letter is from Burley's counsel to Drake's counsel. Because the letter was not addressed to Horace Mann, it can hardly be considered a demand on the same. The express policy language covers wrongful acts by Horace Mann, and therefore, requires that the written demand for damages be made upon the insured, Horace Mann, and not a third-party. Furthermore, the fact that the letter was forwarded to Horace Mann by Drake's counsel does not turn it into a written demand upon Horace Mann. Nor does the letter demand monetary damages. It merely references potential "extracontractual exposure" and an opening of the policy limits.

Although a request to open the $25,000 policy limits could be construed as a monetary demand, such a request was not made to Horace Mann—it was made to Drake's counsel. Indeed, as Horace Mann notes, Burley's counsel could not have made such a demand upon Horace Mann at the time of the September 14, 2010 letter. According to Florida state-law, which controlled the underlying personal injury action, a demand cannot be made against the insurer until a verdict or settlement has been obtained against the insured, which had not yet occurred as of the date of the September 14, 2010 letter. See Fla. Stat. § 627.4136(1) ("It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy."). Thus, the September 14, 2010 letter does not constitute a claim as defined by the E&O policy.

### 2. *A Judicial, Administrative, Arbitration, or Other Alternative Dispute Proceeding in Which Monetary Damages are Sought*

As to the second definition under the E&O policy, a claim is "a judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 3, at cl. 3(a). Initially, Horace Mann argues that Lexington is barred from relying on the second definition of claim by the doctrines of waiver, estoppel, and mend-the-hold. Horace Mann's argument for estoppel as to the second definition fails for the same reasons as discussed above.

As to the doctrine of waiver, it is well-established that a theory raised for the first time in opposition to summary judgment is waived. Anderson v. Donahoe, 699 F.3d 989, 998 (7th Cir. 2012). Horace Mann contends that Lexington waived its right to argue that a claim accrued

outside the policy period based on the second definition because it did not specifically rely on that definition in its reservation of rights letter, or in its complaint. The Court rejects this argument. As Lexington points out, in its reservation of rights letter to Horace Mann, it reserved the right to change or revise its position as further information came to light, and affirmatively stated that "[n]othing in this letter is intended to waive any rights the Company has or may have under the Policy, at law and in equity, all of which are expressly reserved." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 59, at p. 1. In addition, Lexington does not rely on a specific definition of claim in its complaint, it merely asserts that "[a] 'Claim' within the meaning of the Lexington Policy was made against Horace Mann no later than September 20, 2012, when Horace Mann received the letter dated September 14, 2010 from Mr. Burley's counsel." Compl. ¶ 33. Therefore, the Court finds that Lexington did not waive its right to argue that a claim accrued outside the policy period based on the second definition.

Lastly, the mend-the-hold doctrine "forbids the defendant in a breach of contract suit . . . to change its defenses, at least without a good reason to do so . . . in the midst of a suit." Ryerson Inc. v. Fed. Ins. Co., 676 F.3d 610, 614 (7th Cir. 2012) (internal citations omitted). Horace Mann argues that the mend-the-hold doctrine "estops [Lexington] to change the ground on which [it] refused to perform the [E&O] contract." Harbor Ins. Co. v. Cont'l Bank Corp., 922 F.2d 357, 364 (7th Cir. 1990). However, as stated above, Lexington has not changed its position. At all times, Lexington has asserted the accrual of a claim as defined by the policy, not a specific definition thereunder. In any event, "[w]hen there is not prejudice to the opposing party, invoking the doctrine of mend the hold to bar a valid defense is overkill." Ryerson Inc., 676 F.3d at 614. There is no prejudice here because both parties are bound by the policy terms and

definitions expressly contained within the E&O policy. Moreover, Horace Mann was aware that Lexington reserved the right to add additional defenses to coverage. Accordingly, the doctrines of waiver, estoppel, or mend-the-hold do not bar Lexington from defending against coverage under the second definition of claim contained in the E&O policy.

Lexington contends that, although the mediation took place during the policy period, on December 15, 2010, the September 14, 2010 letter, informing Drake's counsel that Horace Mann should be prepared to discuss extra-contractual exposure at the upcoming mediation, constitutes a claim under the second definition. Because the letter was received on September 20, 2010, before the commencement of the policy (eight days later on September 28, 2010), Lexington refuses coverage.

As stated above, under the second definition, a claim is "a judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 3, at cl. 3(a). Lexington's reliance on the September 14, 2010 letter is misplaced. At most, the letter constitutes <u>notice</u> of mediation, not the "alternative dispute proceeding" itself as defined by the policy language. Additionally, the letter was not addressed to Horace Mann, and therefore in no way impacted Horace Mann or its relationship with Lexington under the E&O policy. Nothing in the policy prevented Horace Mann from attending mediation for a case in which it was not a party, in an attempt to settle any <u>potential</u> extra-contractual liability. Although an oral demand for $8 million was made at mediation, it was neither written, nor outside of the policy period, and it is therefore irrelevant as to whether a claim was made before September 28, 2010. Moreover, although Horace Mann may have believed that it could settle the potential claim within the $1 million retention that it had with
15

Lexington, this belief or settlement tactic does not somehow create a claim under the terms of the policy that would require reporting to Lexington.

Finally, Lexington argues that, according to the policy, Horace Mann was required to provide notice of mediation before it occurred. The policy provides that "the Corporate Risk Manager, General Counsel's Office, Claims Legal Department of [Horace Mann] shall notify [Lexington] of the setting of a trial, arbitration or mediation date within 60 days of becoming aware of the date." App. to Pl. Lexington Ins. Co.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. Ex. 3 at Endorsement No. 12(B). It is undisputed that the relevant Horace Mann officers became aware of the upcoming mediation on December 7, 2010 or December 10, 2010. Although Horace Mann could have informed Lexington of the mediation five to eight days before it occurred, it did not; Horace Mann waited twenty-seven days, until January 11, 2011, to inform Lexington of the mediation and the Burley-litigation, which was still within the 60 days as required by the policy. Lexington cannot unilaterally create a requirement that notice must be given <u>before</u> the date of the alternative dispute resolution when it is not provided for in the written terms of the policy. Therefore, Lexington fails to show that a claim accrued on or before September 20, 2010 based on the second definition contained in the policy. Because Lexington fails to show that Horace Mann reported a claim as defined by the E&O policy that occurred before September 28, 2010 (outside the policy period), Horace Mann is entitled to judgment as a matter of law.

## III. CONCLUSION

For the foregoing reasons, partial summary judgment is granted in favor of Defendant Horace Mann and summary judgment is denied as to Plaintiff Lexington.

IT IS SO ORDERED.

ENTER:

*[signature: Charles R. Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 4, 2013