## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY<br>a Delaware Corporation,<br><br>Plaintiff/Counter-Defendant,<br>v.<br><br>HORACE MANN INSURANCE COMPANY<br>an Illinois Corporation,<br><br>Defendant/Counter-Plaintiff/<br>Third Party Plaintiff,<br>v.<br><br>AON RISK INSURANCE SERVICES, INC.,<br>a California Corporation,<br><br>Third Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 11-cv-02352<br><br>Honorable Charles R. Norgle, Sr. |

**LEXINGTON'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW
IN ITS FAVOR ON COUNTS I AND II OF HORACE MANN'S COUNTERCLAIM**

Pursuant to Federal Rule of Civil Procedure 50(a), Lexington Insurance Company ("Lexington") moves this Court for the entry of judgment as a matter of law in Lexington's favor and against Horace Mann on Counts I and II of Horace Mann Insurance Company's counterclaim. A Rule 50(a) motion for judgment as a matter of law must be granted if, with respect to an issue which has been fully heard, there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. FED. R. CIV. P. 50(a); *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 898 F.2d 512, 515 (7th Cir. 1990).

The parties conducted a three-day jury trial on Counts I and II of Horace Mann's counterclaim. The trial on Counts I-II involved only two witnesses, David Ousley and Alan

1

Burkholz, and 36 exhibits were submitted into evidence.[1] The jury trial focused almost exclusively on whether Horace Mann satisfied a contractual condition precedent: *the policy's requirement that Horace Mann notify Lexington of a "Claim," which is defined in the policy as "a written demand for monetary damages."* As set forth below, Horace Mann failed to introduce any evidence to support the allegations in ¶¶ 26, 33 and 35 of its counterclaim that Horace Mann had provided notice of a Claim or "written demand" to Lexington. Given this absence of evidence, no reasonable jury could possibly find by a preponderance of the evidence that Horace Mann satisfied all conditions precedent, and render a verdict in Horace Mann's favor on Counts I and II of the counterclaim. Therefore, the Court must enter a judgment in favor of Lexington and against Horace Mann on Counts I-II of the counterclaim.

## I. No Reasonable Jury Could Find That Horace Mann Notified Lexington Of A Written Demand For $17 Million.

To prevail on its breach of contract claim in Count I, Horace Mann must prove by the preponderance of the evidence that it satisfied all conditions precedent. "Under Illinois law, a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Insurance Company*, 962 F.2d 628, 633 (7th Cir. 1992) (citing *Kilianek v. Kim*, 548 N.E.2d 598, 600 (Ill. Ct. App. 1989)). "The failure to perform a condition precedent may be construed as a breach of contract." *Id.* (citing *Jones v. Seiwert*, 518 N.E.2d 394, 397 (Ill. Ct. App. 1987) ("Where a contract contains a condition precedent, the contract is neither enforceable nor effective until the condition is performed or the contingency occurs.")). Thus, if Horace Mann failed to satisfy a condition precedent, Lexington has

---

[1] See HM 1,3,5,6,7,8,11,12,14,15,17,18,21,22,24,25,26,28,30,31,32,33,34,35,38,40,41,45,100,110; LEX20,29,55,59,60,63.

no obligation to perform under the contract, and the contract may not be enforced against Lexington as a matter of law.

Regarding insurance policies, under Illinois law a notice provision in an insurance policy is a valid condition precedent and "not a mere technical requirement that the insured is free to overlook or ignore with impunity." *Montgomery Ward and Co., Inc. v. The Home Ins. Co.*, 753 N.E.2d 999, 1004 (Ill. Ct. App. 2001). And where, as here, the policy is a "claims-made" policy, *i.e.*, a policy requiring that claims be both made and reported during the policy period, "such reporting requirements are strictly construed." *Executive Risk Indemnity, Inc. v. Chartered Benefit Servs. Inc.*, 2005 WL 1838433, *6 (N.D. Ill.) (internal quotation marks and citation omitted). Thus, under Illinois law, even technical breaches of a notice provision are fatal to a party that is insured under a claims-made policy. In Count I of its counterclaim, Horace Mann affirmatively alleges that it satisfied all conditions precedent: "Horace Mann fully performed under the Lexington Policy including paying its premium and satisfying all conditions precedent to coverage." *See* ECF No. 14 at ¶ 35 (EX. A).

It is undisputed that the policy requires Horace Mann to give notice to Lexington of a "Claim," which is defined in the policy as a "written demand for monetary damages." The relevant policy provisions are set forth below:

> This policy shall pay the Loss of the Insured arising from a Claim first made against the Insured during the Policy Period and reported in writing to the Company during the Policy Period . . .
>
> \*   \*   \*
>
> "Claim" means: (1) a written demand for monetary damages . . . .
>
> \*   \*   \*
>
> The Insured shall, as a condition precedent to the rights provided by this policy give written notice to the Company during the Policy Period as soon as practicable after the Corporate Risk Manager, General Counsel's Office, or Claims Legal Department of the

3

> Insured has knowledge of any Claim which involves . . . the Insured's evaluation that a single Claim or related Claims presents a loss and/or expense exposure equal to or exceeding $500,000 . . . .
>
> \* \* \*
>
> If, during the Policy Period … the Insured shall become aware of a specific Wrongful Act which the Insured reasonably expects may give rise to a Claim, and the Insured gives written notice to the Company during the Policy Period . . . providing the information described below, any Claim which is subsequently made against the Insured arising out of such Wrongful Act and promptly reported to the Company, shall be treated as a Claim first made and reported during the Policy Period.
>
> \* \* \*
>
> The Insured shall furnish the Company with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Company may reasonably request.
>
> \* \* \*
>
> In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address: [c-claim@chartisinsurance.com](mailto:c-claim@chartisinsurance.com) . . . . For this endorsement only . . . . "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

*See* HM1 (EX. B).

In support of its breach of contract claim, Horace Mann alleged that it had reported to Lexington a "written demand" or "Claim" made by Burley's counsel for $17 million, and after reporting this demand in writing Lexington opined that the case should settle for less than $10 million:

> 26. The jury returned a verdict in favor of Burley for $17M. Horace Mann notified Lexington about the verdict. Thereafter, Burley's counsel demanded in writing that Horace Mann pay the entire amount of the verdict because Horace Mann allegedly

> unreasonably failed to settle Burley's claim within the limits of Drake's policy. After Horace Mann reported to Lexington, Lexington opined that the case should settle for less than $10M.
>
> * * *
>
> 33. …. After the Burley verdict, Burley demanded in writing that Horace Mann pay the entire amount of the verdict. This "Claim" was reported to Lexington as required by Section 9 of the Lexington Policy.

EX. A at ¶¶ 26, 33, 35. At trial, it was established that the "report" referenced in ¶¶ 26 and 33 of the counterclaim occurred during a March 7, 2011 telephone call between Ousley and Burkholz:

> Q. Now if I recall correctly, March 7th was the date you had the conversation with Mr. Burkholz about the $17 million demand, correct?
>
> A. Correct.

TRANSCRIPT OF TRIAL PROCEEDINGS at 454:11-14 (EX. C). However, <u>neither witness</u> could recall anyone specifying on that telephone call that Burley's $17 million demand was "in writing," in stark contrast to what is alleged in the counterclaim:

### Mr. Ousley's Trial Testimony

> Q. Do you recall whether you told Mr. Burkholz that it was a written demand or not during that phone call?
>
> A. I do not recall. EX. C at 357:13-15.

### Mr. Burkholz's Trial Testimony

> Q. Now your recollection is that no one told you during this phone call that the demand was in writing, correct?
>
> A. That's correct. I just learned where the negotiations were at post verdict. EX. C at 207:1-4.

Moreover, Burkholz further testified that Lexington did not received notice of this written demand for $17 million at any time prior to this litigation:

**Mr. Burkholz's Trial Testimony**

> Q. Prior to the filing of the counterclaim, were you made aware that plaintiff or plaintiff's attorney made a written demand for $17 million?
>
> A. No. EX. C at 312:22-25.

Regarding the documents entered into evidence during the jury trial on Counts I and II of the counterclaim, none of the documentary evidence submitted during the trial constituted notice to Lexington of a "written demand" by Burley's counsel. In fact, Mr. Burkholz testified unequivocally that none of the approximately *two dozen* documents shown to him during his direct examination constituted notice of a $17 million written demand, *see* EX. C at 270:1-307:7, and counsel stipulated that the remaining documents shown to him did not constitute notice of a $17 million written demand. *See* EX. C at 308:17-20. Similarly, at no time did Ousley identify any document as constituting notice to Lexington of a $17 million written demand. And Ousley was the only Horace Mann witness that testified in this trial.

If that were not enough, neither Ousley or Burkholz could recall anyone from Horace Mann sending anyone at Lexington a copy of the written demand for $17 million, *i.e.*, the March 3, 2011 email from Burley's counsel (introduced into evidence as HM 15, *see* EX. D), at least not until this litigation:

**Mr. Burkholz's Trial Testimony**

> Q. Following the March 15th letter, the reservation of rights letter that's on the screen, did Lexington receive a copy of the March 3rd, 2011, e-mail from Burley's counsel demanding $17 million?
>
> A. Eventually it was received quite awhile after that.
>
> Q. And in what context was that e-mail received?
>
> A. I was told it was received during this litigation having to do with counterclaims.
>
> Q. Do you know the date of when it was received?

6

> A. Oh, I would say at least a year after this letter. I don't remember. EX. C at 331:10-20.

### Mr. Ousley's Trial Testimony

> Q. And I believe you testified you don't recall a copy of this e-mail being sent to Lexington, correct?
>
> A. I don't recall. EX. C at 474:17-19.

In sum, Horace Mann's claim in Count I for breach of contract fails as a matter of law. Horace Mann provided no evidence supporting its pled allegations that it had notified Lexington of a written demand for $17 million. Because no evidence whatsoever was admitted in the trial, no reasonable jury could find that Horace Mann satisfied the policy's notice and reporting requirement, a valid condition precedent. This is not an instance of weighing competing evidence – which is the province of the jury – but rather a party's abject failure to submit any evidence to satisfy a required contractual condition precedent, and a condition precedent that is strictly construed under Illinois law. As such, the Court should enter a judgment in favor of Lexington and against Horace Mann on Count I of the counterclaim for breach of contract.

**II.** <u>**Count II Similarly Fails As A Matter Of Law.**</u>

Count II is a cumulative, tag-along action seeking a declaration that Horace Mann gave Lexington "timely" notice of a Claim. As an initial matter, because Count I fails as a matter of law then Count II necessarily also fails as a matter of law, and judgment should be entered in Lexington's favor and against Horace Mann on Count II. Moreover, as set forth above, Horace Mann alleges that it reported to Lexington under Clause 9 of the policy, which expressly requires "prompt" reporting of a Claim. Our courts distinguish "as soon as practicable" from "prompt" and analogize prompt notice with "immediate" notice. *See INA Ins. Co. of Ill. v. City of Chgo*, 379 N.E.2d 34, 37 (Ill. Ct. App. 1978); *Highland Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1250 (7th Cir. 1993). As set forth above, Horace Mann failed to present any evidence that it had reported to

7

Lexington a $17 million "written demand" or Claim on March 7, 2011, in stark contrast to what Horace Mann alleges in ¶¶ 26 and 33 of its counterclaim. *See* EX. A. And to the extent Horace Mann attempts to allege "in the alternative" that the counterclaim itself is technically notice of a "written demand," an allegation that Horace Mann failed to plead *in over five years of litigation* (and therefore waived at trial), and an allegation that flies in the face of its pled allegation that it had given notice in March 2011, any such "notice via pleading" provided four months *after* the settlement is hardly "prompt."

Similarly, Horace Mann failed to present any documentary evidence that Horace Mann gave Lexington notice of a $17 million "written demand" at any time prior to Horace Mann's filing of its counterclaim. Thus, Horace Mann's declaratory judgment also fails as a matter of law, and Lexington is entitled to judgment in its favor and against Horace Mann on Count II.

Finally, the jury should not be determining a question of law, *i.e.*, reasonableness of notice. "[W]here the facts are undisputed, the reasonableness of notice to an insurer by its insured is a question of law." *Montgomery Ward & Co. v. Home Ins. Co.*, 753 N.E.2d 999, 1004 (Ill. Ct. App. 2001). It was established at trial – without dispute – that the alleged conversation about the $17 million demand occurred on March 7, 2011. As such, the date when Horace Mann allegedly gave notice is not in dispute, and reasonableness thereof should be determined by the Court, not by a jury.

### III. Horace Mann Never Pled "Excusal" Of Condition Precedent And Waived The Right To Do So.

Although not explicitly raised at trial, Horace Mann recently provided Lexington with proposed jury instructions that indicate Horace Mann will attempt to introduce – impermissibly – an unpled theory in Horace Mann's counterclaim, *i.e.*, a purported "valid excuse" for nonperformance of a condition precedent. As set forth in Illinois Pattern Instruction 700.07,

8

which governs the parties' dispute, the "valid excuse" instruction "should be given when a party claims that a ***prior material breach of contract*** excused his performance." (emphasis added) (citing *Stanley Gudyka Sales Co. v. Lacy Forest Prods. Co.*, 915 F.2d 273 (7th Cir. 1990); *Borys v. Rudd*, 566 N.E.2d 310 (Ill. Ct. App. 1990)). In over five years of litigation, Horace Mann has never once alleged that Lexington committed a "prior material breach" that excused Horace Mann's performance. And Horace Mann certainly cannot do so – for the very first time – during or *after* its case in chief.

Moreover, this *unpled* allegation contradicts Horace Mann's *pled* allegation that "Horace Mann fully performed under the Lexington Policy including paying its premium and satisfying all conditions precedent to coverage." ECF No. 14 at ¶ 35. At no time did Horace Mann plead in the alternative that it was "excused" in any regard from satisfying a condition precedent, and under Illinois law Horace Mann has therefore has waived any ability to do so at trial. "Though an excuse for not performing a condition is for some purposes equivalent to performance, yet it is not the same thing, and, therefore in pleading, performance must never be averred by a party who relies upon an excuse for not performing, but he must state his excuse." *Hart v. Carsley Mfg. Co.*, 77 N.E.2d 897 (Ill. 1906). The Illinois Supreme Court has long held that a plaintiff may not surprise a defendant at trial with an unpled theory of excusal of performance:

> The defendant has a right to know what the plaintiff charges against him in order to properly make his defense and to prevent his being taken by surprise by the evidence at the trial. It is a familiar principle of pleading that when the consideration of the defendant's contract is executory, or its performance is to depend on some acts to be done or forborne by the plaintiff, or on some other event, the plaintiff must aver the fulfillment of the condition or show some excuse for the nonperformance.

*Feder v. Midland Casualty Co.*, 147 N.E.2d 468, 471 (Ill. 1925) (citations omitted); *see also Thornberry v. Dept. of Ed. City of Chgo*, 290 N.E.2d 360, 362 (Ill. Ct. App. 1972) (holding that

9

to enforce an agreement to compromise and settle "the pleading must allege performance of those acts or facts which show excuse of performance before there can be recovery against the other party." (citing *Feder*)).

Even worse, Horace Mann attempts to combine the "valid excuse" allegation with other theories it has failed to raise in over five years of litigation: promissory estoppel and waiver. Putting aside that an excusal of condition precedent occurs only where there exists a *prior material breach*, Horace Mann's failure to plead waiver and estoppel in its counterclaim results in (most ironically) waiver of Horace Mann's ability to assert such theories at trial.

Under Illinois law, both estoppel and waiver must be affirmatively pleaded or they are forever waived. *See, e.g., Elliott v. Inter–Ins. Exch. of Chi. Motor Club*, 523 N.E.2d 1086, 1089 (Ill. Ct. App. 1988) (holding that plaintiff could not raise estoppel argument because "[u]nder Illinois law, both estoppel and waiver must be affirmatively pleaded or they are waived"); *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 977 (Ill. Ct. App. 1984) (affirming denial of permanent injunction, on the grounds that trial court properly rejected plaintiff's waiver and estoppel arguments where "plaintiff has waived these defenses by failing to sufficiently plead them"). Horace Mann failed to plead the foregoing waiver and estoppel arguments. As such, Horace Mann waived its ability to raise these unpled theories at trial.

## IV. Conclusion

Horace Mann has alleged for almost five years that it had notified Lexington of a $17 million written demand and therefore satisfied a contractual condition precedent under the policy. At the jury trial, however, Horace Mann failed to present the jury with a scintilla of evidence (let alone a preponderance of evidence) to support its allegation. As Rule 50(a) provides, this Court should take the case from the jury under such circumstances. Wherefore, for

10

the reasons stated herein, Lexington respectfully moves this Court for the entry of judgment as a matter of law in Lexington's favor and against Horace Mann on Counts I and II of Horace Mann Insurance Company's counterclaim.

Dated:  April 15, 2016

Respectfully submitted,

LEXINGTON INSURANCE COMPANY

By:   /s/ Joseph E. Collins
 One of Its Attorneys

Joseph E. Collins
Fox Rothschild LLP
353 N. Clark St., Suite 3650
Chicago, Illinois 60654
(312) 517-9227
jcollins@foxrothschild.com