

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LEXINGTON INSURANCE COMPANY,   )
a Delaware Corporation,   )
   )
      Plaintiff,   )
   )   No. 11 CV 2352
     v.   )
   )   Hon. Charles R. Norgle
HORACE MANN INSURANCE COMPANY,   )
an Illinois Corporation,   )
   )
      Defendant/Third-Party Plaintiff,   )
   )
     v.   )
   )
AON RISK INSURANCE SERVICES WEST,   )
INC.,  a California Corporation,   )
   )
      Third-Party Defendant.   )

## OPINION AND ORDER

CHARLES R. NORGLE, United States District Court Judge

Plaintiff Lexington Insurance Company ("Lexington"), a professional malpractice

insurer, filed this action in 2011 against Defendant/Third-Party Plaintiff Horace Mann Insurance

Company ("Horace Mann"), an automobile insurance provider. Lexington seeks a determination

that it had no duty to indemnify its insured, Horace Mann, for a loss that Horace Mann

encountered. Horace Mann has filed a counterclaim against Lexington and a third-party

complaint against its insurance broker, Third-Party Defendant Aon Risk Insurance Services, Inc.

("Aon"). After the parties concluded their presentations of the evidence at a jury trial, Lexington,

Horace Mann, and Aon each moved for judgment as a matter of law pursuant to Federal Rule of

Civil Procedure 50. For the following reasons, Lexington's and Aon's motions are granted, and

Horace Mann's motions are denied.

# I. BACKGROUND

## A. The Burley Litigation

A motor vehicle accident that occurred on May 16, 2008, in Tampa, Florida has engendered this snarled litigation between the three insurance companies. Christopher Drake ("Drake"), who had an auto insurance policy with Horace Mann, was involved in a car accident with Joseph Burley ("Burley"). Burley was riding a motorcycle and Drake was driving a SUV. Burley was severely injured in the accident and air-lifted in a helicopter to Tampa General Hospital for treatment. Drake was issued a traffic citation at the scene. Horace Mann created a claim for the accident the next day.

On June 30, 2008, Horace Mann received a letter from Burley's attorney, Gene Odom ("Odom"). The letter offered to settle the entire claim for the bodily injury limits of Drake's insurance policy—$25,000—if Horace Mann tendered a check within twenty days of the letter, which was dated June 26, 2008. The letter included an exchange-of-information form that had been filled out at the scene of the accident, pictures of Burley's bodily injuries (his mouth was wired shut and his right arm and leg were casted), and pictures of the damage to Burley's motorcycle, helmet, and jacket. The letter noted that medical records were not yet available, but that the bills would likely exceed $25,000. Horace Mann responded before the twenty days elapsed and acknowledged that it was willing to settle the case for the policy limit, but needed to receive Burley's hospital records before settling. Horace Mann did not receive the medical records within the twenty days and therefore did not tender a settlement check to Odom's office.

On August 14, 2008, Horace Mann received a copy of the lawsuit (the "Burley Litigation") that had been filed on Burley's behalf against Drake in Hillsborough County, Florida. As reflected in a December 18, 2009 report, Horace Mann realized that Odom's June 26, 2008 letter was sent as a "bad faith 'set up'" that could expose Horace Mann, not Drake, to

extracontractual liability ("ECL") beyond the $25,000 policy limits. Trial Ex. HM 25, at 11, ECF No. 469-5.

The jury trial in the Burley Litigation began on January 31, 2011. After a five day trial, the jury returned a $17 million verdict in favor of Burley, which consisted of $1.4 million for special damages and $15.6 million for pain and suffering. Drake's counsel filed post-trial motions, including a motion for remittitur, on February 14, 2011, and a hearing on the motions was set for March 23, 2011, which was continued to March 30, 2011.

On March 3, 2011, Odom sent an email proposing settlement to Alan Nisberg ("Nisberg")—the attorney who prepared the December 18, 2009 report and was responsible for managing Horace Mann's prospective ECL matter. In the email, Odom stated:

> As you know, we are facing post-trial motions, appeal and the necessary next collection step of bad faith litigation.
>
> * * *
>
> I told you last night that our initial offer to settle this case would be the face value of the judgment, or $17 million. I have confirmed that my client is willing to negotiate from that number. In order to get this case resolved, wherein your client can gain the benefit of the discount, we should work towards doing this within the upcoming few days. I look forward to hearing from you.

Ex. D to Lexington's R. 50(a) Mot. J. Matter Law Favor Counts I & II Horace Mann's Countercl., at 3, ECF No. 465-4. Nisberg forwarded the email to Jeff Strickland, Claims Manager for Horace Mann, and Jay Fylak, Litigation Claims Consultant for Horace Mann, minutes after receiving the email. Horace Mann arranged for a settlement conference with Odom, which occurred on March 23, 2011, via telephone. After several rounds of negotiations, Horace Mann settled the Burley Litigation for $7 million; and on April 7, 2011, Horace Mann wired the funds to Odom's office.

*1. Horace Mann's insurance policy with Lexington.*

In 2010, Horace Mann purchased an "Insurance Company Professional Liability Insurance Policy" (the "Policy") from Lexington. Ins. Co. Prof'l Liab. Ins. Policy 11, ECF No. 1-1 [hereinafter the "Policy"]. A professional liability policy is commonly referred to as an "Errors and Omissions" or "E&O" policy and its purpose is to insure against losses incurred via mistakes made during the professional representation of a client. This Policy is the document governing the dispute between Horace Mann and Lexington and the relevant provisions of the Policy are below.

Under the Policy, Lexington agreed to "pay the Loss of the Insured arising from a Claim first made against the Insured during the Policy Period and reported in writing to the Company during the Policy Period . . . for any actual or alleged Wrongful Act of the Insured in the rendering of or failure to render Professional Services . . . ." Policy 11, cl. 1. Most of the contract terms in the previous sentence are easily defined and are not in dispute. As applied to the Burley Litigation, "Loss" is $5,975,000 (the $7 million settlement minus the $1 million Retention and the $25,000 bodily injury limit paid under Drake's policy), "Insured" is Horace Mann, the "Policy Period" is September 28, 2010 through September 28, 2011, the "Company" is Lexington, and the "Wrongful Act" is the ECL, or bad faith damages, that Horace Mann incurred for having not settled the Burley Litigation for the $25,000 policy limit when it was initially offered.

What has been, and remains, a hotly-contested issue throughout the present litigation is the definition of a "Claim." Clause 3 of the Policy defines a "Claim" as:

1. a written demand for monetary damages[1]; or

---

[1] Endorsement #5 of the Policy deletes and replaces paragraph 1 of Clause 3, adding "or non-monetary relief," but this change is irrelevant because Burley only sought monetary damages at all times.

2. a judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought.

Policy 11, cl. 3. For Lexington to be obligated to indemnify Horace Mann, Horace Mann had to notify Lexington of a Claim made against it. Clause 8 of the Policy, titled "Notice/Claims Reporting Provisions," provided the actions required of Horace Mann to properly give notice to Lexington. Endorsement #12 replaced Clause 8 of the Policy "in its entirety," and the portions relevant to this case are stated as follow:

A) The Insured shall, <u>as a condition precedent</u> to the rights provided in this policy give written notice to the Company during the Policy Period <u>as soon as practicable</u> after the Corporate Risk Manager, General Counsel's Office, or Claims Legal Department of the Insured has knowledge of any Claim which involves:

--the Insured's establishment of a loss and/or expense reserve for a single Claim or related Claims of any amount equal to or exceeding $500,000;

--the Insured's evaluation that a single Claim or related Claims presents a loss and/or expense exposure equal to or exceeding $500,000;

\* \* \*

B) Notwithstanding the above, the Corporate Risk Manager, General Counsel's Office, [sic] Claims Legal Department of the Insured shall notify the Company of the setting of a trial, arbitration or mediation date within 60 days of becoming aware of the date.

Policy 33, Endorsement #12 (emphasis added).

When Horace Mann believed that a Claim could—but had not yet—occurred, Clause 9 of the Policy allowed Horace Mann to provide "Notice of a Potential Claim" to Lexington. Clause 9 reads:

If, during the Policy Period . . . the Insured shall become aware of a specific Wrongful Act which the insured reasonably expects may give rise to a Claim, and the Insured gives written notice to the Company during the Policy Period . . . providing the information described below, any Claim which is subsequently made against the Insured arising out of such Wrongful Act and promptly reported to the Company, shall be treated as a Claim first made and reported during the Policy Period.

Policy 16, cl. 9. Clause 9 is important because if Horace Mann learned of a potential claim that may not manifest until after the Policy Period, it could send a notice under Clause 9 and Lexington would still have a duty to defend and indemnify Horace Mann, even if the claim ripened after the Policy Period ended.

Clause 2 accentuates the significance of the notice provisions by describing the consequences if Horace Mann does not notify Lexington of its dealings in an underlying lawsuit—such as the Burley Litigation. Clause 2 reads:

> The Insured shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs in excess of the Retention, without the prior written consent of the Company. Only those settlements, stipulated judgments and Defense Costs in excess of the Retention to which the Company has consented in writing, shall be recoverable as Loss under the policy.

Policy 11, cl. 2.

### 2. Horace Mann's business relationship with Aon.

In 2008, Horace Mann hired Aon to broker the prospective purchase of E&O liability insurance. That year, Horace Mann paid Aon $140,000 via a "Fee Agreement" in exchange for a host of services. Horace Mann 2008-2009 Serv. Fee Agreement 8, ECF No. 398-6. The number of and type of services that Aon provided were listed in an exhibit called "Scope of Services." Id. at 8. Aon promised to "develop, recommend, negotiate and place insurance and/or risk financing programs" on behalf of Horace Mann. Id. Aon additionally promised to (1) "administer [Horace Mann's] relationship with [Lexington] including, but not limited to, issues such as billings in connection with selected programs, data reporting other claim data, and compliance with negotiated requirements" and (2) "provide services such as claim advocacy and claim consulting as outlined herein." Id. The term "claim advocacy" is not defined or outlined in the document, but "claim consulting" is. Claim consulting includes:

6

(a) assisting [Horace Mann] in providing notice to all insurers whose coverages may apply to any circumstances, occurrences, claims, suits, demands and losses subject to provision #6 below; (b) facilitating contact between [Horace Mann] and [Lexington]; (c) providing an overview of coverages that may be available to [Horace Mann] under the applicable insurance policy; and, (d) advising [Horace Mann] on requirements for payment of a claim.

Id.

Provision #6 provided a boundary to Aon's responsibility, stating that "it is [Horace Mann's] responsibility to take such steps as are necessary to notify directly those insurers whose coverages may apply to any circumstances, occurrences, claims, suits, demands and losses in accordance with and as may be required by the terms and conditions of the policies placed for [Horace Mann] under this agreement." Id.

Horace Mann continued its business relationship with Aon into 2010. In May of 2010, Aon provided Horace Mann with a guideline on how to report Claims to Lexington (the "Claims Reporting Guide"). See Ex. E at 2, Aon's R. 50(a) Mot. J. Matter Law 2, ECF No. 496-7 [hereinafter "Aon's JMOL"].The guideline was instructive for the policy period that ended September 28, 2010. In September of 2010, Horace Mann renewed its arrangement with Aon until September 28, 2011, for a cost of $145,000. The relevant "Scope of Services" language remained almost verbatim to the language used in 2008. See Compensation Agreement, Ex. 7 to Horace Mann's Statement Additional Facts Submitted Opp'n Aon's Mot. Summ. J. 8, ECF No. 398-7. However, in 2010, Aon promised to also provide a "risk control" service in addition to claim advocacy and claim consulting; risk control was not defined in any way.

A copy of a Fee Agreement formally signed by agents for Aon and Horace Mann has never been presented to the Court. Both the 2008 and the 2010 Fee Agreements were unsigned. Nevertheless, neither party disputes that Horace Mann paid the $145,000 fee in 2010 nor that

Aon provided services in return. The dispute lies with regard to the quality of the services that Aon provided.

### 3. Communications between the three insurance companies.

Representatives from Horace Mann, Lexington, and Aon testified at the trial. Except for a few phone calls, most of the communications between the three companies occurred by way of email or letter. The relevant documents that were transmitted between the companies are highlighted herein.

As mentioned above, Horace Mann realized in December of 2009 that it was facing a potential bad faith claim after it did not settle with Burley for $25,000. Horace Mann, however, did not contact Aon or Lexington regarding the Burley Litigation until August 2010. On that day, Horace Mann sent Aon a case file that it maintained for the Burley Litigation and requested that Aon report a Claim to Lexington. Ex. G to Aon's JMOL, at 2. The case file was titled "Horace Mann Insurance Companies Multi-Line Excess LAE included in Limit ECL Claim Form Auto and Property Losses" and included Horace Mann's internal notes. Because the case file was created, controlled, maintained, and updated exclusively by Horace Mann, the Court will call the case file Horace Mann's "Internal Log." When Horace Mann first sent the Internal Log to Aon, it did not include a copy of any complaint against Drake, a copy of a complaint naming Horace Mann as a defendant, or copies of any of the pleadings from the Burley Litigation. Aon informed Horace Mann that it needed a copy of a complaint in order to notify Lexington of a Claim. Ex. H to Aon's JMOL, at 2, ECF No. 496-8.

As of September 16, 2010, Aon still had not received a copy of a complaint from Horace Mann. Aon reminded Horace Mann that there was still no record that Horace Mann had informed Lexington about the Burley Litigation. Ex. J to Aon's JMOL, at 4, ECF No. 496-10. On

September 21, 2010, Horace Mann provided Aon with a copy of the complaint in the underlying Burley Litigation. A complaint naming Horace Mann as a defendant did not exist at that time. That is because a complaint against Horace Mann was never filed; it did not and still does not exist. Three days later, on September 24, 2010, Horace Mann emailed Aon and explained that, "There's no 'written' extra contractual allegation" in the Burley Litigation and that it "wish[ed] to withdraw this claim." Id. at 2.

About three months later, on December 17, 2010, Horace Mann emailed Aon stating: "We'd like to resubmit this ECL Claim to the E&O carrier: 62269D - Drake. Although there's no 'written' allegation of bad faith, there is an exposure in that the plaintiff attorney has verbally alleged bad faith, and we anticipate he'll amend the lawsuit to reflect it." Ex. 2 to Aon's R. 56.1 Statement Undisputed Material Facts Supp. Mot. Summ. J. 28, ECF No. 364-2. Aon took Horace Mann's request under consideration to determine whether a notice of potential claim or a notice of Claim should be sent to Lexington. On January 11, 2011, Aon sent a letter on behalf of Horace Mann to Lexington "to comply with the Policy's notice provisions outlined in Section 9, Notice of Potential Claim." Trial Ex. HM 2, at 3, ECF No. 469-2. The letter included a copy of the complaint from the Burley Litigation and Horace Mann's Internal Log.

After receiving the letter, Lexington set up a case file for Horace Mann with its own accompanying date-and-time-stamped internal notes. The first note was entered on January 13, 2011 as "POTENTIAL E AND O CLAIM . . . ." Trial Ex. HM 7, at 5, ECF No. 469-4. Subsequently, Horace Mann updated Lexington approximately every two weeks regarding the progress of the Burley Litigation without using Aon as an intermediary. These updates were done by phone and by email. The February 11, 2011 note in Lexington's case file indicates that Lexington "scheduled a call for [that day] with several people from Horace Mann and Aon to

discuss coverage and how to proceed." Id. at 4. By the beginning of March, Lexington had not formally taken a position on whether it would cover the potential claim. After receiving the entire Burley Litigation case file from Horace Mann, Lexington noted on March 8, 2011 that "it appeared that there was a problem with notice . . . ." Id. at 3.

On March 15, 2011, Lexington's attorney sent Horace Mann a letter that appeared to deny coverage and reserved Lexington's contractual rights under the Policy. In the letter, Lexington: (1) stated its "position regarding coverage"; (2) "expressly reserved" "any rights" that it had "at law and in equity"; and (3) informed Horace Mann that it "intend[ed] to file promptly an action for declaratory relief and seek an adjudication of its rights under the Policy." Trial Ex. HM 24, at pp. 1, 4, ECF No. 469-5. Notwithstanding the letter from Lexington, Horace Mann continued to send emails to Lexington with updates on the progress of the Burley Litigation throughout the month of March.

## B. Procedural History

Lexington, as set forth in its March 15th letter, filed a one-count declaratory judgment action in the Northern District of Illinois on April 7, 2011, seeking a determination that no coverage was owed to Horace Mann under the Policy. Horace Mann subsequently filed a counterclaim against Lexington, which alleged a breach of contract ("Count 1"), sought a declaratory judgment that coverage was in fact owed ("Count 2"), and requested attorney fees under 215 Ill. Comp. Stat. 5/155 ("Count 3"). Horace Mann also filed a one-count third-party "Professional Negligence" complaint against Aon. Horace Mann's Ins. Co.'s Third-Party Compl. 4, ECF No. 18. Horace Mann alleges that Aon acted negligently when it provided erroneous advice about how to provide notice of the Burley Litigation to Lexington. Thus, if Lexington is found not liable, Horace Mann wants Aon to pay Horace Mann the $5,975,000 loss and Horace

Mann's attorneys' fees incurred in this litigation. Just over five years passed before this litigation reached trial; the Court recites only the procedural history relevant to this opinion.

Roughly eighteen months into the litigation, Horace Mann moved for partial summary judgment on the issue that "the September 14, 2010 Letter is not a 'Claim' under the Lexington E&O Policy," and Lexington filed a cross-motion. See Horace Mann Ins. Co.'s Mot. Partial Summ. J. Sept. 14, 2010 Letter Not "Claim" Under Lexington E&O Policy, ECF No. 93. On September 4, 2013, the Court denied Lexington's motion for summary judgment on the basis that Lexington failed to show that a Claim ripened before the Policy Period. The September 4th Opinion granted Horace Mann's motion, but it left undecided the issue of whether Horace Mann properly notified Lexington of a Claim during the Policy Period.

Also on September 4, 2013, in a separate order, the Court denied Horace Mann's motion to amend its pleadings to add a breach of contract claim against Aon. In short, Horace Mann did not show "good cause" for not amending its pleading prior to the March 16, 2012 deadline of the parties' Rule 16 scheduling order. Order, ECF No. 154.

Subsequently, Aon filed for summary judgment and the Court denied the motion on September 18, 2014, because it was premature. The Court explained in the Order that "[i]f Horace Mann is ultimately denied coverage based on the untimeliness of its notice under the terms of the E&O policy [the Policy], it may yet have a claim against Aon for faulty advice and for failure to provide the notice on time." Order, ECF No. 178.

No other potentially dispositive motions were filed until December 4, 2015, when Lexington moved for summary judgment on Counts 1, 2, and 3 of Horace Mann's counterclaim. On January 8, 2016, Horace Mann filed a cross-motion for summary judgment. Aon followed suit and filed a summary judgment motion on March 14, 2016. Because of how soon the second

round of summary judgment motions were filed before trial, the Court took the parties' motions under advisement during the pendency of the trial.

On April 12, 2016, a six-person jury was impaneled and the trial began. Lexington and Horace Mann presented their evidence on the declaratory action regarding the terms of the Policy. Then Horace Mann presented its evidence against Aon regarding its alleged Professional Negligence. Count 3 of Horace Mann's counterclaim against Lexington for attorneys' fees under 215 Ill. Comp. Stat. 5/155 was before the Court as a bench trial. At the conclusion of the parties' presentations of the evidence, each party separately moved for a directed verdict under Rule 50.[2] Those motions are now before the Court and the Court enters judgment on the merits of this case as a matter of law.

## II. DISCUSSION

### A. Standard of Decision

Federal Rule of Civil Procedure 50 allows the Court to award judgment as a matter of law to the moving party "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." See Fed. R. Civ. P. 50(a)(1); Simstad v. Scheub, 816 F.3d 893, 899-900 (7th Cir. 2016). Put another way, the Court may grant judgment as a matter of law only if it is convinced that "the evidence presented, combined with all reasonable inferences permissibly drawn," and then viewed in the light most favorable to the non-moving party, is sufficient to support a verdict in favor of the movant. See EEOC v. Mgmt. Hospitality of Racine, Inc., 666 F.3d 422, 431 (7th Cir. 2012). In considering the evidence, the Court may not make credibility

---

[2] Horace Mann filed two motions against Lexington pursuant to Rule 50. The first of them is less than three pages in length and seeks a ruling in Horace Mann's favor because at the beginning of trial Lexington's counsel stated "My claims are resolved by your Honor. We are the counterdefendant in the breach of contract action." ECF No. 467 at 3. The summation of Horace Mann's argument in the Rule 50 motion is this brief exchange between Lexington's attorney and the Court, not any evidence. Within the context of Rule 50, such a sparse and underdeveloped argument is absurd. Accordingly, Horace Mann's first Rule 50 motion is denied.

determinations of the witnesses. Id. at 432; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

## B. Whether Lexington has a Duty to Indemnify Horace Mann

The central issue in the dispute between Lexington and Horace Mann is whether Horace Mann satisfied the Policy's notice provision, which would have triggered Lexington's duty to defend and indemnify Horace Mann. This issue requires the Court to take two steps. First, the Court must interpret the Policy. In its interpretation, the Court must determine how the Policy defined a Claim and when it required Horace Mann to report the Claim to Lexington. Second, the Court must find whether there is evidence that could allow a reasonable jury to find that Horace Mann timely reported a Claim for the Burley Litigation.

### 1. Construction of the applicable provisions of the Policy.

The construction of a contract is a question of law; the parties do not dispute that Illinois law controls and the terms of the contract are unambiguous. See Lexington Ins. Co. v. Horace Mann Ins. Co., Case No. 11-cv-2352, 2013 WL 4782031, *6 (N.D. Ill. Sept. 4, 2013). Under Illinois law, if the contractual language is unambiguous, the Court must construct the contract according to the words' plain and ordinary meaning. AMCO Ins. Co. v. Erie Ins. Exch., 2016 IL App (1st) 142660 ¶ 20 (citing Outboard Marine Corp v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1212 (Ill. 1992)). In this case, there are two categories of applicable contractual provisions: those relating to the definition of a "Claim," and those defining "Notice."

#### a. Whether Burley made a "Claim" Against Horace Mann, as defined by the Policy.

In determining whether the parties have complied with the Policy terms, the Court must first find the moment when Horace Mann's Wrongful Act—the potential bad faith claim arising from the Burley Litigation—ripened into a Claim, which would trigger Horace Mann's duty to

inform Lexington. The Policy defines a "Claim" as either (1) "a written demand for monetary damages" or (2) "a judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought." Policy, cl. 3(a).

The parties do not dispute that Burley never instituted a judicial, administrative, arbitration, or other alternative dispute proceeding against Horace Mann before or after receiving his verdict. Under Florida law, which governed the Burley Litigation, the injured party has no cause of action against the tortfeasor's insurer until the injured party receives a verdict or settlement against the insured tortfeasor. See Fla. Stat. § 627.4136(1). As a result, Horace Mann could not have been joined in the Burley Litigation until after the jury returned a verdict. Accordingly, Burley could only make a Claim—as defined in the Policy—against Horace Mann if a reasonable jury could find that Burley made a written demand on Horace Mann for monetary damages.

The parties have disputed when Burley's Claim against Horace Mann ripened; that is, when, or even if, Burley sent a written demand for damages to Horace Mann. In its September 4, 2013 decision granting partial summary judgment in favor of Horace Mann, the Court found that Burley's September 14, 2010 letter to Drake's counsel did not constitute a Claim against Horace Mann. See Lexington, 2013 WL 4782031 at *8. The Court found that the letter was not a Claim because it was addressed to Drake's counsel, not Horace Mann, it did not demand a monetary amount and it did not reference potential legal action against Horace Mann. See id.

After viewing the evidence introduced at trial in a light most favorable to Horace Mann, the evidence shows that Horace Mann received a written demand from Burley's counsel on March 3, 2011. This is the only document that can be construed as a Claim, as defined by the Policy. As distinguished from the September 14, 2010 letter to Drake's counsel, the March 3,

2011 email (1) addressed Horace Mann's counsel, (2) discussed that Burley's next step was to pursue a bad faith claim against Horace Mann, and (3) demanded the full $17 million jury verdict from Horace Mann. Thus, the Court finds that a reasonable jury could find that a Claim against Horace Mann existed on March 3, 2011, which triggered a corresponding contractual duty for Horace Mann to inform Lexington about the Claim before Lexington would have a duty to defend and indemnify Horace Mann.

> b. *How the Policy requires Horace Mann to give Lexington Notice of the Claim.*

When a contract contains a condition precedent to performance, the nonperforming party has not breached the contract unless the other party first satisfied the corresponding condition precedent. See AMCO, 2016 IL App (1st) 142660 ¶ 21. Accordingly, the Court must determine whether Horace Mann performed its post-Claim notification obligations, as stated in the Policy. Insurance policies—including the one at issue here—typically contain a condition precedent in the form of a notice clause, which requires the insured party to provide the insurer with notice before the insurer will have a contractual duty to defend and indemnify the insured. Id. Notice conditions are strictly enforced because the insurer would be severely prejudiced if it was forced to indemnify its insured after the insured concealed the claim. Id.; see also Montgomery Ward & Co., Inc. v. The Home Ins. Co., 753 N.E.2d 999, 1004 (Ill. App. Ct. 2001) ("A notice provision is a valid condition precedent and not a mere technical requirement that the insured is free to overlook or ignore with impunity."). The Illinois Supreme Court has held that requiring notice to be given "as soon as practicable" means "within a reasonable time." Country Mut. Ins. Co. v. Livorsi Marine, Inc., 856 N.E.2d 338, 343 (Ill. 2006) (quoting Barrington Consol. High Sch. v. Am. Ins. Co., 319 N.E.2d 25, 27 (Ill. 1974)). Moreover, if the insured does not give adequate notice within a reasonable time, the insured loses its rights under the policy, regardless of whether the lack of notice prejudiced the insurer. See Country Mut. Ins. Co., 856 N.E.2d at 346.

In this case, three sections of the Policy form the basis for Horace Mann's duty to inform Lexington of its dealings with Burley. First, Clause 9 of the Policy describes how Horace Mann is supposed to give notice of a potential claim to Lexington. Second, Endorsement #12, which replaced Clause 8 and became effective on September 28, 2010, describes how and when Horace Mann is supposed to give notice about an actual claim to Lexington. Third, Clause 2 states that Lexington has no duty to defend or indemnify Horace Mann if Horace Mann engages in litigation or settles the case without Lexington's permission.

First, Clause 9 governs the parties' relationship in the event that Horace Mann provides Lexington with notice of a potential claim. Specifically, Clause 9 required Lexington to defend and indemnify a Claim made against Horace Mann that occurred after the Policy Period, provided that Horace Mann satisfied certain conditions. According to the Policy, once Horace Mann reasonably expected a Claim to be filed against it, it could give Lexington notice, in writing, of a potential claim. If the notice of potential claim was filed with Lexington before the Policy Period ended, Lexington would be required to provide coverage once the potential claim ripened into an actual Claim. While the parties concede that the notice of a <u>potential</u> claim must be in writing, they disagree about what form the notice of an <u>actual</u> Claim must take when Horace Mann previously provided Lexington with its notice of a potential claim.

Second, Endorsement #12 states that "[Horace Mann] shall, as a condition precedent to the rights provided by this policy give written notice to [Lexington] during the Policy Period as soon as practicable after [Horace Mann's relevant corporate officers] ha[ve] knowledge of any Claim . . . ." Policy, Endorsement #12(A). The parties do not dispute that notice of an actual Claim must be in writing if Horace Mann did not give Lexington previous notice of a potential claim.

Third, Clause 2 states that "[Horace Mann] shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs in excess of the Retention, without the prior written consent of [Lexington]." Policy, cl. 2. The parties do not dispute that Horace Mann's violation of the terms of Clause 2 would extinguish Lexington's duties to defend and indemnify Horace Mann.

Here, Horace Mann argues that because it previously provided Lexington with notice of a potential claim, the Policy did not require the subsequent notice of an actual Claim to be in writing, only that Horace Mann "promptly reported" the actual Claim to Lexington. See Policy, cl. 9. Lexington argues in response that Endorsement #12, governing how Horace Mann must provide notice of an actual Claim—coupled with Clause 1, which describes the broader agreement between Lexington and Horace Mann—conclusively establishes that all notices about any Claims must be in writing to satisfy the Policy's notice condition. The Court agrees.

In particular, Clause 1 states in pertinent part that "This policy shall pay the Loss of [Horace Mann] arising from a Claim first made against [Horace Mann] during the Policy Period and reported in writing to [Lexington] during the Policy Period . . . ." Policy, cl. 1 (emphasis added). This is the first clause of the Policy and sets forth the overarching principles that predominate the entire Policy. Aside from Clause 1, Endorsement #12 requires Horace Mann to give Lexington written notice of "any Claim;" it does not carve out an exception for potential claims that had already been noticed to Lexington. Thus, the Court finds that even if Horace Mann gave written notice of a potential claim to Lexington, the Policy required Horace Mann to provide a second written notice to Lexington once it knew that the potential claim had ripened into a Claim.

*2. Whether Horace Mann timely reported the Burley Claim to Lexington.*

Consistent with its interpretation of the Policy provisions above, the Court initially makes the following three findings. First, under Clause 3(a)(1), a jury could find that a Claim ripened against Horace Mann no earlier than March 3, 2011. Second, from construing Clauses 1, 9, and Endorsement #12, any notice of a Claim that Horace Mann sent to Lexington must have been in writing. Third, under Clause 2, Lexington does not have to defend and indemnify Horace Mann if Horace Mann did not receive written consent from Lexington prior to April 7, 2011, when it settled its dispute with Burley for $7 million.

In light of these findings, the Court now analyzes the evidence to see if there is a sufficient basis for a reasonable jury to find that Horace Mann gave written notice of the Claim to Lexington at any time between March 3, 2011 and April 7, 2011. Horace Mann points to four moments within this time period to argue that it gave notice to Lexington that complied with the terms of the Policy.[3] As will be explained further below, none of the moments comply with the notice provisions of the Policy.

First, Horace Mann contends that it gave written notice of a potential claim to Lexington on January 11, 2011, and that the Claim ripened on March 3, 2011. Thus, Horace Mann only had to provide Lexington with oral notice of the Claim before the potential claim would morph—in Lexington's eyes—into an actual Claim. The parties do not dispute that Horace Mann gave oral notice to Lexington on March 7, 2011, when it informed Lexington of Burley's ECL demand.

---

[3] Horace Mann also argues that it gave sufficient written notice of a Claim in the counterclaim that it filed in this litigation on June 17, 2011, which stated "Burley's counsel demanded in writing that Horace Mann pay the entire amount of the verdict...." Horace Mann Ins. Co.'s Mot. Directed Verdict Counts I & II Horace Mann's Countercl. 6, ECF No. 469. However, this cannot be proper notice for two reasons. First, it was made after Horace Mann settled the Burley Litigation and paid the $7 million on April 7, 2011. And second, Lexington did not consent to the $7 million payment prior to its transmission, as Clause 2 requires.

But for the reasons discussed above in Part II.B.1.b, the Court finds that oral notice of a Claim does not satisfy the Policy's condition precedent found in Endorsement #12. To allow oral notice to be a sufficient means of notice would amend or construct a provision into the Policy that does not exist. Instead, Horace Mann must provide Lexington with written notice of a Claim to trigger Lexington's duties to defend and indemnify, irrespective of Horace Mann's earlier written notice of a potential claim.

Second, Horace Mann argues that it gave notice to Lexington when it sent Lexington its Internal Log—purporting to be three updates on its ECL exposure—which were submitted to Lexington via email once on March 14, 2011 and twice on March 24th. Horace Mann contends that the Internal Log suffices as notice of a Claim to Lexington because Horace Mann discussed the potential amounts that Burley would accept to settle his case against Drake. Each of these three updates suffers from the same fatal defects, however. There is no mention of the March 3, 2011 monetary demand on Horace Mann. And the Internal Log does not reference any Claim against Horace Mann. As written, the documents merely infer that a Claim against Horace Mann is probable, but that probability is in the future and purely speculative. These documents do not give Lexington notice of a written demand, a Claim, against Horace Mann, as required by Endorsement #12. The continually-updated Internal Log and correspondence between Lexington and Horace Mann show that Horace Mann continued to frame the ECL exposure associated with Burley as potential; Horace Mann never gave Lexington written notice that the Burley Litigation had ripened into a Claim. In every instance, Horace Mann frames the dispute—and attendant settlement talks—as one between Burley and Drake.

Moreover, Horace Mann's actions from March to April 2011 are inconsistent with an insured that has given its insurer proper notice of a Claim. For example, on March 24, 2011,

Horace Mann sent its updated Internal Log to Lexington, which said that its (Horace Mann's) settlement authority had been increased to $4.88 million. If Lexington had notice, and was ostensibly defending/indemnifying Horace Mann, Horace Mann could only receive settlement authority from Lexington, it could not give itself authority to settle. Additionally, Horace Mann paid the excess settlement out of its own pocket. It did not seek reimbursement from Lexington until it filed its counterclaim in June 2011. Accordingly, the Court finds that there is not a legally sufficient evidentiary basis upon which a reasonable jury could conclude that the three emails containing the Internal Log served as notice to Lexington that Burley had made a written demand on Horace Mann.

Third, Horace Mann avers that it gave Lexington notice of a Claim via an email sent on March 25, 2011. As with the three previously-sent updates, the email did not state that Burley sent Horace Mann a written demand for damages. Because the email doid not identify a Claim made specifically against Horace Mann, the email did not provide Lexington with notice that satisfies the Policy's condition precedent.

Plainly, nowhere in the updates or email correspondence did Horace Mann discuss a written demand for damages that Burley made upon Horace Mann. Instead, the updates conflated Drake's potential liability (the judgment or settlement, less the $25,000 indemnification from Horace Mann) with Horace Mann's potential extracontractual liability. The emails and writings between Horace Mann and Lexington were missing an explanation that put Lexington on notice that Horace Mann's litigation perspective shifted from defending Drake to defending itself. The demand itself—the March 3, 2011 email—did not have to be provided. But the written communication needed to include that Horace Mann knew of a Claim, and that by Horace Mann's establishment or evaluation, the Claim exceeded $500,000. On the evidentiary record

before the Court, no reasonable jury could find that Horace Mann's statements about settling with Burley would refer to its own liability, instead of Drake's. Because Horace Mann settled its case with Burley before it provided Lexington with contractually compliant Notice, the Court finds that Lexington has no duty to indemnify Horace Mann.

### 3. Whether Lexington's refusal to reimburse Horace Mann was "vexatious and unreasonable."

The parties agreed to try Count 3 of Horace Mann's counterclaim as a bench trial, therefore, the issue of whether Lexington violated 215 Ill. Comp. State. 5/155 is also before the Court. The Illinois statute punishes an insurance company by making it pay attorney fees and additional costs if the insurance company delays settling a claim with its insured. See 215 Ill. Comp. State. 5/155. But "[a]n insurance company does not violate the statute merely because it unsuccessfully litigates a dispute involving the scope of coverage or the magnitude of loss." McGee v. State Farm Fire and Cas. Co., 734 N.E.2d 144, 151 (Ill. App. 2000). An insurance company is only liable if it does not present a "*bona fide* defense" for its refusal to timely pay a claim. Id.

Here, Lexington has done more than just present a *bona fide* defense. It is the prevailing party in this declaratory action regarding the scope of the coverage under the Policy. It has no duty to indemnify Horace Mann. Therefore, the Court finds that Lexington's conduct was neither vexatious nor unreasonable. Judgment is to enter in favor of Lexington on Count 3 of Horace Mann's counterclaim.

## C. Whether Aon was Professionally Negligent

There are a limited number of instances where an insurance broker, like Aon, may be liable to the insured. "[A]n insurance broker, may be liable for losses sustained by an insured when a carrier fails to perform as promised . . .. The theories under which a broker may be liable

21

are: breach of contract, negligence, breach of fiduciary duty, and fraud." AYH Holdings, Inc. v. Avreco, Inc., 826 N.E.2d 1111, 1125 (Ill. App. 2005) (internal citations and quotations omitted). "[W]here both a tort and contract cause of action arise from the same facts, the plaintiff is free to proceed with either theory." Cundiff v. Unsicker, 454 N.E.2d 1089, 1091 (Ill. App. 3d 1983). Horace Mann chose to pursue its action against Aon based on a negligence theory.

To prevail on any negligence claim, Horace Mann must satisfy the elements of negligence, specifically that plaintiff was owed a duty by defendant, that defendant breached that duty, and that an injury was proximately caused by the breach of duty. Jones v. Chicago HMO Ltd. of Illinois, 730 N.E.2d 1119, 1129 (Ill. App. 2000). "[I]n a professional negligence case, the standard of care required of a defendant is to act as would an 'ordinarily careful professional.'" Id. at 1130.

Here, Horace Mann alleges that Aon was professionally negligent during two operative periods: the first during August and September 2010 when Aon "improperly advis[ed] Horace Mann that notice to Lexington of the Burley Litigation was not required;" and second, in August, September, and December 2010 when Aon "fail[ed] to follow Horace Mann's instructions regarding providing prompt notice of the Burley Litigation to Lexington[.]" Horace Mann Ins. Co.'s Third-Party Compl., ¶ 16.

As explained below, both of these formally-pled avenues of recovery are foreclosed by the Court's above determination that a Claim did not exist before March 3, 2011. See *supra*, Section II.B.1.a. In addition, Horace Mann had no further communications with Aon after January 11, 2011, so Aon cannot be held liable for Horace Mann's failure to provide Lexington with Notice between March 3, 2011 and April 7, 2011. Finally, the Court discusses Horace Mann's other theories for showing that Aon was negligent.

*1. Aon's purportedly improper advice between August and September 2010.*

Horace Mann first contacted Aon about the Burley Litigation on August 20, 2010 at which time they sent their Internal Log to Aon and requested that Aon report a Claim to Lexington. This request spawned a series of e-mails between Horace Mann and Aon wherein Aon advised Horace Mann that—according to the Policy—any submission of a Claim to Lexington requires the inclusion of a copy of a complaint. That advice was given to Horace Mann on two occasions, first on August 20, 2010, in an email from Ariel Duris ("Duris") of Aon to Nereida Littrell ("Littrell"); and a second time on August 23, 2010, again from Duris to Littrell. After the second warning that a complaint was required, Horace Mann agreed to delay reporting until they were able to furnish a copy of the lawsuit. On August 23, 2010, Littrell agreed that it was the right decision not to report the Claim to Lexington until Horace Mann was able to produce a copy of the lawsuit substantiating a claim. On September 7, 2010, Duris followed up on pending claims, among them, the Burley Litigation. Horace Mann provided a complaint to Aon on September 21, 2010, three days later, on September 24, Littrell informed Duris that "Horace Mann wish[ed] to withdraw [the] claim." Ex. J to Aon's JMOL, at 2, ECF No. 496-10. Because a Claim did not exist before March 3, 2011, as explained in the Court's analysis above, Aon did not give improper advice during this period.

Aon repeatedly told Horace Mann to produce a copy of the complaint from the Burley Litigation, or a complaint alleging bad faith against Horace Mann, so that they could properly submit a Claim to Lexington on Horace Mann's behalf. Ultimately, Horace Mann, for reasons unexplained in the September 24th e-mail, withdrew its request to submit a Claim. The Court finds nothing improper about the advice that Aon provided to Horace Mann during these two months.

*2. Aon's alleged failure to follow Horace Mann's instructions.*

Horace Mann's second allegation against Aon is that Aon failed to adhere to its instructions and did not report the Burley Litigation in August, September, and December of 2010 despite Horace Mann's instruction to do so. It is a longstanding rule that "[i]t is the primary duty of an agent to obey the instructions given to him by his principal." Dazey v. Roleau, 111 Ill. App. 367, 369 (Ill. App. Ct. 1903). It follows, that if an agent, here Aon, is acting in compliance with its principal's wishes it cannot be liable for breaching that duty. See also 2 Donald S. Malecki, CPCU et al., Commercial Liability Risk Management & Insurance 3-4, Ex. F to Aon's JMOL (discussing duties owed to a principal by his agent). Under a principal-agency theory, Aon could be liable for the breach of a duty to its client, Horace Mann.

*a. Whether Aon failed to follow instructions in August and September of 2010.*

In the weeks following Horace Mann's August e-mail about a potential claim, Aon made continued efforts to secure a copy of the lawsuit in order to report the potential Claim to Lexington. But no complaint naming Horace Mann was ever filed. On September 21, 2010, Littrell provided the Burley Litigation's underlying complaint to Aon. Upon the realization that the complaint did not name Horace Mann as a party, Horace Mann withdrew its request to submit a Claim to Lexington. Following Horace Mann's communication that they wished to withdraw the notice of the Burley Litigation, Aon ceased inquiry into the Burley Litigation and complied with Horace Mann's request to withdraw notice. Thus, the Court finds that a reasonable jury could not find that Aon breached its duty to obey its principal—Horace Mann— and that as an insurance broker, it acted with reasonable care and diligence in compliance with its principal's instructions.

### *b. Whether Aon failed to follow instructions in December of 2010.*

On December 17, 2010, Littrell e-mailed Duris renewing its request for Aon to submit a claim to Lexington related to the Burley Litigation. This time, Littrell was aware of the fact that there was not a complaint against Horace Mann; stating, "Although there's no 'written' allegation of bad faith, there is an exposure in that the plaintiff attorney has verbally alleged bad faith, and we anticipate he'll amend the lawsuit to reflect it." Ex. 2 to Aon's R. 56.1 Statement Undisputed Material Facts Supp. Mot. Summ. J. 28, ECF No. 364-2. Aon did not send a Claim to Lexington; instead, it sent a notice of potential claim, and it took twenty-five days to do so. At issue is whether Aon's decision to send a potential claim instead of a Claim was a breach of its duty, and whether the delay was negligent.

Horace Mann did not identify what type of claim it wished submitted. Moreover, when Aon received instructions that they were to submit a Claim, Horace Mann did not have a complaint filed against it. Following the December 17th email, Aon took steps to determine how best to notify Lexington. Because of the ambiguity in Horace Mann's request and the lack of information that it provided, Aon was uncertain if the Burley Litigation qualified as a notice of circumstance—also known as a potential claim—or a Claim. After the holiday season and deliberations with Aon's legal and claims departments, Aon submitted a potential claim on behalf of Horace Mann. The Court finds that Aon's decision to submit a potential claim complied with Horace Mann's instruction. This ruling is reinforced by the additional findings that no claim existed before March 3, 2011 and that there was no harm to Horace Mann by the twenty-five day delay.

*3. Aon's Actions from March 3, 2011 through April 7, 2011.*

As the Court found above, a Claim did not exist until March 3, 2011; prior to that there was only a potential claim. And Lexington had no duty to indemnify Horace Mann because Horace Mann failed to notify Lexington of a Claim as the Policy required. Accordingly, the Court examines the time period from March 3, 2011 to April 7, 2011, to determine if Aon provided Horace Mann with faulty advice, or failed to provide timely notice of a Claim. But Horace Mann was only in communication with Aon until their potential claim was noticed to Lexington on January 11, 2011; afterwards Horace Mann dealt directly with Lexington and excluded Aon from any further discussion about the Burley Litigation.

Here, it is undisputed that Horace Mann ceased contact with Aon after January 2011. In its Third-Party Complaint, Horace Mann alleges that it relied on Aon through January 11, 2011. Horace Mann introduced no evidence to suggest that Aon was kept abreast of the Burley Litigation or the Lexington Claim after that date. Because Horace Mann has introduced no evidence that Aon failed to follow their instructions to notify Lexington of a Claim after the Claim ripened on March 3, 2011, the Court finds that no reasonable jury could find that Aon breached its duty to follow Horace Mann's instructions.

*4. Additional arguments by Horace Mann.*

Horace Mann, in its Memorandum of Opposition, avers that the actions of Aon were insufficient to meet its duty of due care. Instead of providing the services that it actually did, Horace Mann insists that Aon should have additionally done each of the following:

> researched the law or consulted a lawyer; asked Lexington about its view; if Lexington took a strict view, seek to negotiate a new endorsement that Horace Mann could comply with; set up procedures in the interim to comply with the Lexington view to avoid loss of coverage; and at a minimum warn Horace Mann of the strict view and not issue the Guidelines with language that gave an opposite impression.

Horace Mann's Mem. Opp'n Aon's Mot. for Directed Verdict and Supp. Horace Mann's Mot. for Directed Verdict, 11.

These duties proposed by Horace Mann, however, are unfounded. The Fee Agreement that governs Horace Mann's relationship with Aon details the services to be provided. The agreement contemplates claim advocacy and claim consulting by Aon, but limits those services to:

> 'basic property and casualty claims consulting.' Basic property and casualty claims consulting services consist of: (a) assisting the Client in providing notice to all insurers whose coverages may apply to any circumstances, occurrences, claims, suits, demands and losses subject to provision #6 below; (b) facilitating contact between the Client and the insurer(s); (c) providing an overview of coverages that may be available to the Client under the applicable insurance policy; and, (d) advising Client on requirements for payment of a claim.

Horace Mann 2008-2009 Serv. Fee Agreement 8, ECF No. 398-6. Moreover, following Aon's submission of the potential claim to Lexington, Horace Mann ceased communications with Aon. In their own pleadings, Horace Mann alleges that they only relied on Aon's advice until January 11, 2011. Horace Mann did not ask Aon to take further action after that date. Finally, "provision #6" of the Fee Agreement specifically left the ultimate responsibility of reporting a Claim with Horace Mann. Id. at 8. Because there is no evidence to support the additional duties that Horace Mann demands of Aon, a reasonable jury could not find Aon breached a duty or is liable on this basis.

Horace Mann also makes the argument that the guidelines created by Aon gave wrong advice regarding how to state a Claim. This argument however, is belied by the Fee Agreement, the Claim Reporting Guide, and the testimony at trial. The Court finds that the guidelines adhere to the Policy and provided Horace Mann with correct advice.

The evidence establishes that before a specific Wrongful Act ripens into a recoverable Claim, Horace Mann had no obligation to report it to Lexington. Specifically, the Claim Reporting Guide provided to Horace Mann states that "[i]f during the Policy Period Horace Mann becomes aware of a specific Wrongful Act which they reasonably expect may give rise to a Claim, the circumstances may be reported to Lexington." Ex. E to Aon's JMOL, at 2; see also Ex. D to Aon's JMOL, at 15 cl. 9. Because the Claim Reporting Guide tracks the Policy, it did not provide Horace Mann with incorrect information. Additionally, the guideline was created for a policy period preceding the one at issue in this case. There was no evidence at trial indicating that Horace Mann relied on the guidelines when it decided not to provide notice of a Claim to Lexington after March 3, 2011, and instead decided to settle and pay seven million dollars to Burley. Nothing Aon did, or provided, caused Horace Mann to fail to comply with the notice provisions of the policy. Therefore, the Court finds that Aon's guidelines do not constitute a breach of its duties.

### III. CONCLUSION

For the foregoing reasons, the Court enters judgment as a matter of law in favor of Lexington and Aon, and against Horace Mann. Lexington owes no duty to indemnify Horace Mann, and Aon is not liable for any losses attributed to Horace Mann's failure to timely report its loss in connection with the Burley Litigation to Lexington.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: May 13, 2016